Joseph C. WAGNER, Jr., and Jeffery L. Atchley, Petitioners,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

Appeal No. 85–2389.

United States Court of Appeals, Federal Circuit.

Feb. 18, 1986.

Dan N. Norwood, Byrd, Cobb, Norwood, Lait, Dix & Babaoglu, Memphis, Tenn., argued for petitioners.

Robert A. Reutershan, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen. and David M. Cohen, Director. Elizabeth H. Corey, Office of the Gen. Counsel, Office of Personnel Management, of counsel. Diane R. Liff, Asst. Gen. Counsel for Litigation, Dept. of Transp., of counsel.

Before MARKEY, Chief Judge, FRIEDMAN, Circuit Judge, and MILLER, Senior Circuit Judge.

FRIEDMAN, Circuit Judge.

This petition for review challenges the decision of the Merit Systems Protection Board (Board) affirming the ruling of the Office of Personnel Management (OPM) that former air traffic controllers who had been discharged for striking against the United States were not suitable for employment with the Federal Aviation Administration (Administration). We affirm.

I

The petitioners are former air traffic controllers who were discharged for participating in the illegal air traffic controllers' strike in August 1981. Shortly after the strike, OPM determined that the discharged strikers would be debarred from any federal employment for three years. On December 9, 1981, the President issued the following directive to the Director of OPM:

The Office of Personnel Management has established the position that the former air traffic controllers who were discharged for participating in a strike against the Government initiated on August 3, 1981 shall be debarred from federal employment for a period of three years. Upon deliberation I have concluded that such individuals, despite their strike participation, should be permitted to apply for federal employment outside the scope of their former employing agency.

Therefore, pursuant to my authority to regulate federal employment, I have determined that the Office of Personnel Management should permit federal agencies to receive applications for employment from these individuals and process them according to established civil service procedures. Your office should perform suitability determinations with respect to all such applicants according to established standards and procedures under 5 CFR, Part 731.

After reviewing reports from the Secretary of Transportation and the Administrator of the Federal Aviation Administration, I have further determined that it would be detrimental to the efficiency of operations at the Federal Aviation Administration and to the safe and effective performance of our national air traffic control system to permit the discharged air traffic controllers to return to employment with that agency. Therefore, these former federal employees should not be deemed suitable for employment with the Federal Aviation Administration.

I direct you to process their applications for reemployment with the federal government accordingly.

17 Weekly Comp. of Pres.Doc. 1364 (Dec. 9, 1981).

On January 6, 1982, the Director of OPM issued a bulletin to the heads of all executive departments and independent agencies which, after quoting the foregoing presidential directive, instructed that agencies considering employment applications from former air traffic controllers should submit the application and additional information to OPM. The Director further stated:

(b) All persons whose employment was terminated on account of the strike by air traffic controllers, which began on or

about August 3, 1981, shall be determined not to be suitable for reinstatement or appointment in any position in the Federal Aviation Administration, because it would be detrimental to the efficiency of that agency by interfering with or preventing its effective performance of its duties and responsibilities (5 CFR 731.202(a)(2)).

(c) The Office of Personnel Management shall consider, on a case-by-case basis, applications for Federal employment, other than in the Federal Aviation Administration, from air traffic controllers whose employment was terminated on account of striking, and shall make appropriate determinations of their suitability for the particular employment for which they may apply....

The named petitioners Wagner and Atchley applied to the Administration for appointment as air traffic controllers. The Administration forwarded the applications to OPM, which denied favorable suitability determinations. The effect of the denial was to bar them from obtaining positions with the Administration.

Wagner and Atchley appealed the OPM action to the Board. The presiding official of the Board certified the case as a class action on behalf of all former air traffic controllers who, after their discharge for participation in the illegal strike, were denied favorable suitability determinations by OPM. The class comprised more than 400 former controllers.

The petitioners waived a hearing, and the case was submitted to the presiding official based upon written submissions by the parties. The parties stipulated that "OPM found each of the appellants to be unsuitable based solely on a determination that they had been removed from their positions with the FAA for striking in August 1981" and "based on its interpretation of the President's directive of December 9, 1981."

The presiding official affirmed the "OPM decision indefinitely debarring appellants as unsuitable for FAA employment...." The presiding official held (1) that the bar upon employment by persons who struck

against the government that 5 U.S.C. § 7311 (1982) imposes, discussed below, is not limited to three years, and (2) that OPM correctly interpreted the President's October 9, 1981 directive as imposing an indefinite and not just a three-year bar upon employment by the Administration of former air traffic controllers who had struck.

The petitioners did not seek review by the Board of the presiding official's decision, which became the decision of the Board. The petitioners then filed the present petition for review of the Board's decision.

## II

The petitioners challenge the Board's decision on the grounds (which are the issues the parties stipulated the Board was to decide) (A) that OPM incorrectly interpreted the presidential directive as imposing an indefinite ban upon the employment by the Administration of the former controllers, and (B) that if the presidential directive did impose such a ban, it was illegal because it was inconsistent with 5 U.S.C. § 7311, which the petitioners interpret as barring strikers from federal employment for only three years.

■ A. The presidential directive explicitly imposed an indefinite ban upon the employment of striking controllers by the Administration. After stating in the first paragraph that the President had concluded that "such individuals, despite their strike participation, should be permitted to apply for federal employment outside the scope of their former employing agency," it provided:

I have further determined that it would be detrimental to the efficiency of operations at the Federal Aviation Administration and to the safe and effective performance of our national air traffic control system to permit the discharged air traffic controllers to return to employment with that agency. Therefore, these former federal employees should not be deemed suitable for employment with the Federal Aviation Administration.

It is difficult to imagine more precise or explicit language to state that the striking controllers were not to be employed by the Administration.

The petitioners contend, however, that in light of the first paragraph of the directive, which referred to the three-year bar on federal employment and waived that bar for employment outside the Administration, the subsequent provisions of the directive should be construed as continuing the bar upon employment with the Administration only for the three-year period that theretofore had covered all federal employment. That is not what the directive said, however. Moreover, that interpretation is inconsistent with the reasons the President gave for barring employment with the Administration, namely, that employment "would be detrimental to the efficiency of operations at the Federal Aviation Administration and to the safe and effective performance of our national air traffic control system...." There is no indication that the President believed that the adverse consequences of permitting the striking controllers to return to the Administration would continue for only three years after the strike.

■ Finally, we need not ourselves determine the meaning of the presidential directive. Our inquiry is a narrower one: whether the Director's interpretation of the directive is arbitrary and capricious or otherwise legally erroneous. The Director has broad discretion in interpreting a presidential directive relating to federal personnel matters. Like the Ninth Circuit, we give "great deference" to that interpretation. *Kester v. Campbell,* 652 F.2d 13, 15 (9th Cir.1981), *cert. denied,* 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 298 (1982) (Civil Service Commission interpretation of Executive order of President). "To be sustained, the agency's interpretation need not be the only reasonable interpretation.... All that is required is that the interpretation adopted by the agency be reasonable ... [and it is] considered reasonable 'unless it is plainly erroneous or inconsistent with

the [order].'" *Id.* at 15–16. (Citations omitted.)

Under these standards we have no basis for rejecting the Director's interpretation of the presidential directive as imposing an indefinite ban upon employment of the striking controllers by the Administration.

■ B. The statute that makes it a crime to strike against the government, 5 U.S.C. § 7311, also provides that

An individual may not accept or hold a position in the Government of the United States ... if he—

\*   \*   \*   \*   \*   \*

(3) participates in a strike ... against the Government of the United States....

This language is unambiguous. One who participates in a strike against the United States "may not accept or hold a position" with the United States Government. There is nothing in this broad language that even suggests that the absolute prohibition against employment by strikers is limited to three years.

The petitioners argue, however, that the legislative history of the provision shows that Congress did not mean what it said, but intended to limit the disqualification from government employment to three years. They rely upon the fact that predecessor statutes had so limited the disqualification and upon an alleged congressional intent not to change that limitation when Congress enacted the new provisions.

It would be extraordinary to conclude that when Congress substituted for a three-year ban upon government employment an indefinite ban, it nevertheless intended to limit the new ban to three years. Such a conclusion would require at a minimum a clear, unequivocal, and explicit statement by Congress that it so intended. The legislative history not only contains no such indication but, to the contrary, is fully consistent with the conclusion that the present statute provides an indefinite ban upon government employment by strikers.

The predecessor of the present statute was the Act of August 9, 1955, ch. 690, sec. 1, 69 Stat. 624. That statute, like the

present one, provided that no person who participates in a strike against the United States "shall accept or hold office or employment in the Government of the United States." Prior to that statute, various federal statutes barred strikers from government employment. Those statutes included section 305 of the Taft-Hartley Act, 29 U.S.C. § 188 (1952), which the petitioners treat as the predecessor of the present statute. Another of those statutes, however, section 612 of the Housing Act of 1949, ch. 338, 63 Stat. 413, 444, barred the expenditure of appropriated funds to pay the salaries or wages of individuals employed by the Housing and Home Finance Agency or by the Department of Agriculture who engaged in a strike against the Government and contained no time limit on the length of the bar.

The Senate Committee Report of the 1955 Act explained that "[t]his legislation will clarify and consolidate in a single, permanent, penal statute the rider reenacted each year in appropriation acts as well as certain similar permanent provisions in existing law, which in effect prohibit the employment by the Government of ... any person who strikes against the Government...." The provisions that the committee stated the new law would "clarify and consolidate in a single statute" included section 305 of the Taft-Hartley Act, which limited the ban on employment of strikers to three years, and section 612 of the Housing Act of 1949, which did not so limit the bar. The Senate Committee stated that the bill "will prohibit the employment in the Federal Government ... of any person who ... participates in any strike against the Government...." S.Rep. No. 1256, 84th Cong., 1st Sess. 1, 2, *reprinted in* 1955 U.S.Code Cong. & Ad.News 2873, 2874.

In light of this history, it is most unlikely that if Congress intended the broad and unequivocal ban upon employment by persons who participated in a strike against the government to be limited to three years, it would not have said so—either in the statute itself, as section 305 of the Taft-Hartley Act did, or in the legislative history. It did neither. The conclusion is inescapable that Congress meant exactly what it said—that persons who participated in a strike against the government are barred indefinitely from employment in the government.

The fact that, in a compassionate exercise of clemency, OPM limited the bar on employment other than with the Administration to three years and the President reduced the bar on such employment to less than three years, provides no basis for concluding that the statutory bar itself is limited to three years. Since no question has been raised about the authority of the President and OPM to take such action, we need not and do not consider that issue.

The decision of the Merit Systems Protection Board is affirmed.

AFFIRMED.