Christopher K. KORTE, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

Appeal No. 85–2544.

United States Court of Appeals, Federal Circuit.

July 31, 1986.

Joseph P. Cyr, Shearman & Sterling, New York City, argued for petitioner. With him on brief was Clarence W. Olmstead, Jr.

Hillary A. Stern, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on brief were Richard K. Willard, Asst. Atty. Gen. Civ. Div., David M. Cohen, Director and Robert A. Reutershan. W. Scott Burke, General Counsel and Carrol H. Kinsey, Jr., Atty., Office of the General Counsel, Office of Personnel Management, of counsel.

Before MARKEY, Chief Judge, and FRIEDMAN and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

Petitioner Korte appeals from the final decision of the Merit Systems Protection Board (Board), Docket No. NY07318510161, which affirmed a decision of the Office of Personnel Management (OPM) determining that he was not suitable for a position as an air traffic controller in connection with his application for employment with the Federal Aviation Administration (FAA). We affirm.

## BACKGROUND

Petitioner is a former air traffic controller who was removed from employment with the FAA based on charges of participating in the 1981 strike against the United States, in violation of 5 U.S.C. § 7311, and absence without leave. In 1984, he applied for employment with the FAA. The parties have stipulated that OPM determined that he was not suitable for employment solely because (1) he belongs to a class of individuals discharged for their participation in the strike; and (2) OPM interpreted a Presidential directive as indefinitely barring from reemployment with the FAA all controllers discharged as a result of the strike.

This court addressed an essentially identical factual situation in a recent class action case, *Wagner v. Office of Personnel Management*, 783 F.2d 1042 (Fed.Cir.),

cert. denied, —— U.S. ——, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986).

After the strike, the President issued a directive to the Director of OPM stating that those former federal employees who had been discharged for participating in the strike "should not be deemed suitable for employment with the Federal Aviation Administration." 17 Weekly Comp. of Pres. Doc. 1364 (Dec. 9, 1981). The petitioners in *Wagner* argued

(A) that OPM incorrectly interpreted the presidential directive as imposing an indefinite ban upon the employment by the [Federal Aviation] Administration of the former controllers, and (B) that if the presidential directive did impose such a ban, it was illegal because it was inconsistent with 5 U.S.C. § 7311, which the petitioners interpret as barring strikers from federal employment for only three years.

*Wagner*, 783 F.2d at 1044. With regard to the first issue, the court upheld OPM's interpretation as imposing an indefinite ban. *Id.* at 1045. With regard to the second issue, the court examined the language of the statute and the legislative history, and concluded that "Congress meant exactly what it said—that persons who participated in a strike against the government are barred indefinitely from employment in the government." *Id.* at 1046.

Korte opted out of the Wagner class and now attempts to distinguish the *Wagner* holding on constitutional grounds. He argues on appeal that the determination of his unsuitability is unconstitutional because it (1) deprives him of liberty and property rights without the procedural protection required by the Due Process Clause; (2) adopts an irrebuttable presumption violative of the Due Process Clause in that it has no rational relation to any legitimate government interest; and (3) violates the Bill of Attainder Clause.

## OPINION

What Korte does not challenge is the constitutionality of 5 U.S.C. § 7311 (1982) (the statute), which reads in pertinent part:

An individual may not accept or hold a position in the Government of the United States ... if he—... (3) participates in a strike ... against the Government of the United States....

Neither at the Board nor in his briefs to this court does he attack the statute itself, and in response to a question from the panel during oral argument his counsel confirmed that even if the statute imposed a permanent bar to future employment it would not be unconstitutional.

In a memorandum opinion, the Supreme Court has affirmed a judgment that the statute is constitutionally sound. *United Federation of Postal Clerks v. Blount,* 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971), *aff'g* 325 F.Supp. 879 (D.D.C.1971). The district court held that the statute did not violate any constitutional rights of those employees who were members of the plaintiff's union. 325 F.Supp. at 885. The district court also stated that "it is not irrational or arbitrary for the Government to condition employment on a promise not to withhold labor collectively, and to prohibit strikes by those in public employment." 325 F.Supp. at 883.

■ Similarly, we believe it is not irrational or arbitrary for the government to prohibit reemployment of discharged employees who participated in a strike against the government, and that is just what the statute does. "[P]ersons who participated in a strike against the government are barred indefinitely from employment in the government." *Wagner,* 783 F.2d at 1046. "[A] worker may not hold a government position if the individual has participated in a strike against the government." *American Postal Workers v. United States Postal Service,* 682 F.2d 1280, 1283 (9th Cir. 1982).

■ Conceding, as he must, that the statute does not limit the period of debarment, Korte relies on 5 C.F.R. § 731.303 for his assertion of a period of debarment limited to three years. In its entirety, that regulation reads:

When a person is disqualified for any reason named in § 731.202, OPM, in its discretion, may deny that person examination for and appointment to a competitive position for a period of not more than 3 years from the date of determination of disqualification. On expiration of the period of debarment, the person who has been debarred may not be appointed to any position in the competitive service until his fitness for appointment has been redetermined by OPM.

Among the many reasons for disqualification listed in 5 C.F.R. § 731.202(b) is "[a]ny statutory disqualification which makes the individual unfit for the service." Section 7311 is such a statutory disqualification. As the parties stipulated, OPM determined he was not suitable for employment on the basis of that statutory disqualification and the President's directive—he belongs to a class of individuals discharged for their participation in the strike.

■ Korte's implicit argument that OPM's action was contrary to its own regulation is beside the point because OPM was not acting on its own authority and exercising its own discretion; rather it was acting under the express direction of the President. Even assuming, arguendo, that the indefinite statutory bar was limited to three years by the regulation, the President's directive overrode or superseded that regulation and imposed an indefinite ban on the class of which Korte was a member. As the government properly argues, OPM's role in the suitability determination was limited to executing the President's instructions.

On the factual record in this case, it is our view that OPM properly determined that he was disqualified. The statute is constitutionally sound and OPM's action was in accord with the statute and the President's directive.

## I DUE PROCESS

### A

■ Korte asserts that he had constitutionally protected liberty and property in-

terests of which he was deprived in violation of the Due Process Clause. Citing *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), Korte urges this court to adopt a balancing test and to declare OPM's action constitutionally defective.

We note that the Supreme Court recently stated that it has "never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause." *Lyng v. Payne,* —— U.S. ——, ——, 106 S.Ct. 2333, at 2343, 90 L.Ed.2d 921 (1986). Nevertheless assuming, without deciding, that he had constitutionally protected property and liberty interests, and even assuming those interests were "terminated," we are not persuaded that the Due Process Clause was violated. Korte was afforded what the Supreme Court has declared are the "essential requirements of due process, ... notice and an opportunity to respond." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, ——, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). Because Korte was entitled to a full administrative hearing, 5 C.F.R. §§ 731.401(a), 1201.24(c), and judicial review, 5 U.S.C. § 7703(a)(1), it was constitutionally permissible for a pretermination hearing to be "an initial check against mistaken decisions." *Loudermill,* 105 S.Ct. at 1495.

Here, the facts are not disputed. Korte admitted participating in the strike. Yet he asserts that OPM should have evaluated his application more fully by considering the factors enumerated in 5 C.F.R. § 731.-202(c), *e.g.,* nature and seriousness of the conduct, contributing social or environmental conditions, and rehabilitation. It may thus appear that he is only asserting a "meaningful opportunity to invoke the discretion of the decisionmaker," *Loudermill,* 105 S.Ct. at 1494, but actually he is arguing that "the decisionmaker should be lenient and depart from legal requirements." *Id.* n. 8. The government properly argues that once it was determined that Korte was removed from his air traffic controller position for strike participation, "there was no need for further investigation as the President's directive was then controlling." This court has held that the Presidential directive "explicitly imposed an indefinite ban upon the employment of striking controllers by the [FAA]." *Wagner,* 783 F.2d at 1044. Because this ban, this rule, was expressly mandated by the President, "we might presume that any interest which might rationally be served by the rule did in fact give rise to its adoption." *Hampton v. Mow Sun Wong,* 426 U.S. 88, 103, 96 S.Ct. 1895, 1905, 48 L.Ed.2d 495 (1976).

When Korte appealed to the Board, he wrote that "[o]n December 8, 1984, I received final notice that I had been determined unsuitable." He had earlier been put on notice of the basis for OPM's ultimate decision and he had the opportunity to respond. Korte relates that during the summer of 1984 he "prepared the necessary application form to take the [controller] examination," albeit less some supplementary materials. By letter dated August 30, 1984, the FAA notified him that OPM had decided he was unsuitable, citing the President's 1981 directive. Korte then sent letters, dated September 5, 1984, to both the FAA and OPM "which, among other things, (1) enclosed my complete application for consideration in reaching a final suitability determination." Korte states that in response to that letter, "OPM acknowledged receipt of my complete application but nevertheless confirmed its earlier action."

It is thus evident that Korte was afforded notice and an opportunity to respond. His assertion of a procedural Due Process Clause violation is not well founded.

**B**

[5] Korte also argues that the indefinite debarment announced in the Presidential directive has no rational relation to any legitimate government interest. We do not agree. At the very least, the statute *authorizes* the indefinite debarment of the discharged controllers. Under the statute, just as the government may "condition

employment on a promise not to withhold labor collectively, and [may] prohibit strikes by those in public employment," *United Federation of Postal Clerks v. Blount,* 325 F.Supp. 879, 883 (D.D.C.), aff'd, 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971), so it may condition reemployment and may prohibit the reemployment of those who participated in a strike against the government. As stated in his directive, the President determined that permitting discharged controllers to return to the FAA would be detrimental both to the efficiency of the FAA's operations and to the safe and effective performance of the nation's air traffic control system. The President's directive does bear a rational relationship to the statutory bar.

## II  BILL OF ATTAINDER

A bill of attainder has been described by the Supreme Court as "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Selective Service v. Minnesota Public Interest Research Group,* 468 U.S. 841, 846–47, 104 S.Ct. 3348, 3350, 82 L.Ed.2d 632 (1984) (quoting *Nixon v. Administrator of General Services,* 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867 (1977)).

Korte argues that "[a]ccording to the Board's interpretation of the President's Memorandum, on December 9, 1981, President Reagan imposed retroactively a new, additional sanction on the discharged controllers never before imposed upon them or any other Federal employees discharged for striking."

■ At the outset, we note that even if the President's directive imposed a new or additional sanction, the directive would not violate the constitutional proscription against *ex post facto* laws. The sanction imposed is civil, not criminal, and from "earliest times," the Supreme Court has construed the *ex post facto* provision to apply only to criminal laws. *Harisiades v. Shaughnessy,* 342 U.S. 580, 594, 72 S.Ct. 512, 521, 96 L.Ed. 586 (1952).

■ Regarding his bill of attainder contention, neither the Presidential directive nor the statute established Korte's "guilt." As OPM argues, his "guilt" was established when he was found to be a strike participant as a result of an adjudicative determination which included a proceeding at the agency level, a proceeding before the Board's regional office, and an appeal to the full Board, each of which was subject to judicial review. In reply, Korte asserts that

> OPM ignores one of the crucial issues on this appeal. The determination of Mr. Korte's participation in the strike did not constitute a finding that Mr. Korte could never be suitable for FAA service again and did not effect an indefinite debarment.

That assertion is meritless because the determination that he participated in the strike necessarily resulted in an indefinite debarment—the statute is an "absolute prohibition against employment by strikers." *Wagner,* 783 F.2d at 1045. Furthermore, in the course of that determination, "the safeguards of a judicial trial," *United States v. Lovett,* 328 U.S. 303, 316, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252 (1946), were provided: for example, he had the right to be represented by counsel, he was clearly informed of the charge against him, the law he was charged with violating had been passed before he committed the act charged, and he was confronted by the witnesses against him. *Id.* at 317–18, 66 S.Ct. at 1079–80.

■ Moreover, the Bill of Attainder Clause was intended "as an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function, or more simply—trial by legislature." *United States v. Brown,* 381 U.S. 437, 442, 85 S.Ct. 1707, 1711, 14 L.Ed.2d 484 (1965). The clause is a limitation on the authority of the legislative branch. *Id.* at 443–46, 85 S.Ct. at 1712–13. Korte has cited no authority, and we are aware of none, holding that the clause applies to the executive branch.

## III

Korte's other arguments are controlled by *Wagner*, which was issued after he filed his initial brief. As to the former controllers who applied for non-FAA positions, whether the President's directive constitutes an action in the nature of an amnesty, reprieve, or pardon within the meaning of Article 2, Section 2, Clause 1 of the Constitution is an issue we need not and do not address.

AFFIRMED.