James S. CLARRY, Archer Bailey, George G. Faulkner, David B. McCollum, David P. Robertson, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

UNITED STATES of America, Federico F. Peña, as Secretary of the Department of Transportation of the United States, David R. Hinson, as Administrator of the Federal Aviation Administration and James B. King, as Director of the Office of Personnel Management, Defendants–Appellees.

No. 1146, Docket 95–6226.

United States Court of Appeals, Second Circuit.

Argued March 8, 1996.

Decided June 12, 1996.

Laurie Edelstein, New York City (Eric M. Lieberman, Michael Ludwig, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, PC, New York City, of counsel), for Plaintiffs–Appellants.

Nancy A. Miller, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, Varuni Nelson, Assistant United States Attorney, Paul M. Geier, Rosalind A. Lazarus, Office of General Counsel, United States Department of Transportation, James Hicks, Steve Abel, Office of General Counsel, Office of Personnel and Management, of counsel), for Defendants–Appellees.

Before: MINER, WALKER and LEVAL, Circuit Judges.

MINER, Circuit Judge:

Plaintiffs-appellants James S. Clarry, Archer Bailey, George G. Faulkner, David B. McCollum, and David P. Robertson (together, the "plaintiffs") appeal from a judgment entered in the United States District Court for the Eastern District of New York (Platt, J.) dismissing their amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state claims upon which relief may be granted. *Clarry v. United States*, 891 F.Supp. 105 (E.D.N.Y.1995). The district court found that the policy of the Office of Personnel Management ("OPM") that barred air traffic controllers who had participated in a strike against the federal government from employment with the Federal Aviation Administration ("FAA"), and from employment with private entities under contract with the FAA,

did not violate the Due Process Clause of the Fifth Amendment or the Administrative Procedure Act ("APA"). The district court also determined that the plaintiffs did not have standing to challenge the FAA's policy of inserting in its contracts with private companies a prohibition against the employment of air traffic controllers who had participated in a strike against the federal government.

For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

This appeal arises from the 1981 air traffic controllers strike against the federal government. From approximately 1970 through 1981, the Professional Air Traffic Controllers Organization ("PATCO") was the exclusive bargaining representative for air traffic controllers employed by the FAA. On August 3, 1981, the members of PATCO commenced a nationwide strike against the federal government (the "strike").

At the time of the strike, 5 U.S.C. § 7311 provided that "[a]n individual may not accept or hold a position in the Government of the United States ... if he ... participates in a strike, or asserts the right to strike, against the Government of the United States." In addition, a regulation promulgated by OPM provided:

> When a person is disqualified for any reason named in § 731.202, OPM, in its discretion, may deny that person examination for and appointment to a competitive position for a period of not more than 3 years from the date of determination of disqualification. On expiration of the period of debarment, the person who has been debarred may not be appointed to any position in the competitive service until his fitness for appointment has been redetermined by OPM.

5 C.F.R. § 731.303.[1] Among the many reasons for disqualification enumerated in 5 C.F.R. § 731.202 was "[a]ny statutory disqualification which makes the individual unfit

---

1. Section 731.303 was amended in 1991 and now appears, as amended, at § 731.304. Because all the events at issue in the present case took place prior to 1991, all references in this opinion to § 731.303 are to the version of the rule that was in effect prior to the 1991 amendments.

for the service."[2] Section 7311 provided such a statutory disqualification.

On August 3, 1981, President Reagan issued an ultimatum, stating that the striking air traffic controllers must return to work within 48 hours or forfeit their jobs. Thereafter, the federal government discharged approximately 11,000 striking air traffic controllers who had failed to return to work by August 5, 1981 (the "strikers"). The plaintiffs were among the strikers.

Following the strike, OPM announced that it would bar the strikers from employment with the federal government for three years pursuant to 5 C.F.R. § 731.303. On December 9, 1981, President Reagan issued a memorandum to the Director of OPM ("President Reagan's Directive") that stated:

The Office of Personnel Management has established the position that the former air traffic controllers who were discharged for participating in a strike against the Government initiated on August 3, 1981 shall be debarred from federal employment for a period of three years. Upon deliberation I have concluded that such individuals, despite their strike participation, should be permitted to apply for federal employment outside the scope of their former employing agency.

Therefore, pursuant to my authority to regulate federal employment, I have determined that the Office of Personnel Management should permit federal agencies to receive applications for employment from these individuals and process them according to established civil service procedures. Your office should perform suitability determinations with respect to all such applicants according to established standards and procedures under 5 CFR, Part 731.

After reviewing reports from the Secretary of Transportation and the Administrator of the Federal Aviation Administration, I have further determined that it would be detrimental to the efficiency of operations at the Federal Aviation Administration and to the safe and effective performance of our national air traffic control system to permit the discharged air traffic control-

lers to return to employment with that agency. Therefore, these former federal employees should not be deemed suitable for employment with the Federal Aviation Administration.

I direct you to process their applications for reemployment with the federal government accordingly.

17 Weekly Comp. Pres. Doc. 1364 (Dec. 9, 1981).

OPM interpreted President Reagan's Directive as barring the strikers for an indefinite period from reemployment with the FAA and private entities under contract with the FAA. On January 6, 1982, OPM issued a bulletin stating that all strikers "shall be determined not to be suitable for reinstatement or appointment in any position in the Federal Aviation Administration, because it would be detrimental to the efficiency of that agency by interfering with or preventing its effective performance of its duties and responsibilities." Federal Personnel Manual Bulletin 731–6. In August of 1985, OPM reiterated its position by issuing a new bulletin stating that "[t]he debarment against reemployment of discharged controllers within the scope of the FAA is indefinite in duration." Federal Personnel Manual Bulletin 731–9.

On August 27, 1992, Clarry filed a complaint in district court naming as defendants the United States, Andrew Card, as Secretary of Transportation, and Thomas Richards, as Administrator of the FAA. Clarry alleged that he had been denied employment with a private company because the company's contract with the FAA prohibited the company from hiring former FAA employees who had participated in the strike against the government. Clarry claimed that the FAA's policy of requiring parties that it contracted with not to employ the strikers violated his right to due process and equal protection. Clarry sought declaratory, injunctive, and monetary relief.

On August 12, 1993, President Clinton issued a memorandum to the Director of OPM ("President Clinton's Directive"), in which

---

**2.** Section 731.202 also was amended in 1991. All references to § 731.202 in this opinion are to

the version of the rule that was in effect prior to the 1991 amendments.

the President stated that he was repealing the bar against employment of the strikers. OPM responded by issuing a bulletin declaring that the strikers would no longer be barred from employment with the FAA or any private entity under contract with the FAA. *See* Federal Personnel Manual Bulletin 731–10.

By motion dated March 30, 1994, Clarry moved in the district court for leave to file an amended complaint. The amended complaint added Bailey, Faulkner, McCollum, and Robertson as plaintiffs and James B. King, as Director of OPM, as a defendant. In the amended complaint, Clarry alleged that, in 1991, he applied for and was denied a position with a company because the company's contract with the FAA prohibited it from hiring any of the strikers. In addition, each plaintiff alleged that he had applied to the FAA for reinstatement as an air traffic controller but was denied a suitability determination by OPM. The plaintiffs alleged four causes of action in the amended complaint. First, the plaintiffs claimed that OPM's policy of barring the strikers from employment with the FAA for an indefinite period violated their right to due process. Second, the plaintiffs alleged that OPM's policy of barring the strikers from employment with the FAA for an indefinite period violated OPM's existing regulations and therefore deprived them of their due process rights. Third, the plaintiffs claimed that OPM failed to comply with the APA's notice and comment rulemaking procedures in implementing the policy. Finally, the plaintiffs alleged that the FAA's practice of inserting in all its contracts with private companies a prohibition against the employment of the strikers violated the Due Process Clause of the Fifth Amendment.

On November 18, 1994, the district court granted Clarry's motion to amend the original complaint, but indicated that it would consider both the original complaint and the amended complaint when addressing the government's motion to dismiss. On July 5, 1995, the district court granted the government's motion to dismiss the original complaint and the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). The district court found that the plaintiffs did not have a property interest protected by the Fifth Amendment, and therefore that OPM's policy did not violate the plaintiffs' due process rights. In addition, the district court determined that OPM's policy did not violate the APA. Finally, the district court found that the plaintiffs did not have standing to pursue their claim that the FAA's policy of inserting in its contracts with private entities a prohibition against the employment of the strikers violated their due process rights. The plaintiffs appealed, challenging the district court's dismissal of the amended complaint.

## DISCUSSION

■■■■ The district court's dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6) is reviewed *de novo* by this Court. *Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth.*, 23 F.3d 636, 639 (2d Cir.1994). In reviewing such a dismissal, we must accept the material facts alleged in the complaint as true, and dismiss only where the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir.1995).

### I. Indefinite Bar on Employment with the FAA

■■■ The plaintiffs' first claim is that the policy of OPM that barred the strikers for an indefinite period from employment with the FAA deprived them of a protected property interest without due process. In connection with this claim, the plaintiffs argue that 5 U.S.C. § 7311 does not provide an indefinite bar on employment for a federal employee who strikes against the government. The plaintiffs further argue that OPM incorrectly interpreted President Reagan's Directive as imposing an indefinite bar on employment with the FAA, when, in fact, the Directive imposed only a three-year bar. Finally, the plaintiffs argue that 5 C.F.R. § 731.303 conferred upon them a constitutionally protected property interest in the right to reemployment with the FAA between 1984 and 1993, when President Clinton's Directive was issued. We reject each of these contentions and hold that the district court properly dismissed the plaintiffs' claim.

■ First, Congress made it clear that any person who participates in a strike against the federal government has no right to federal employment. Section 7311 explicitly provides that "[a]n individual may not accept or hold a position in the Government of the United States ... if he ... participates in a strike, or asserts the right to strike, against the Government of the United States." This language unambiguously provides an absolute bar on employment without any temporal limitation. As the Federal Circuit held, "[t]he conclusion is inescapable that Congress meant exactly what it said [in § 7311]—that persons who participated in a strike against the government are barred indefinitely from employment in the government." *Wagner v. Office of Personnel Management*, 783 F.2d 1042, 1046 (Fed.Cir.), *cert. denied*, 477 U.S. 906, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986); *Dehainaut v. Pena*, 32 F.3d 1066, 1074 (7th Cir.1994) (holding that § 7311, "written without condition or limitation, contemplates an indefinite ban"), *cert. denied*, —— U.S. ——, 115 S.Ct. 1427, 131 L.Ed.2d 309 (1995). If § 7311 were intended to bar federal employees only while they are participating in a strike against the federal government, as the plaintiffs contend, federal employees would be able to strike without recourse. Accordingly, we hold that § 7311 provides that any person who participates in a strike against the federal government may be barred indefinitely from employment with the federal government.

Second, we think that OPM properly interpreted President Reagan's Directive as barring the strikers indefinitely from employment with the FAA. The Directive first notes that the strikers, "despite their strike participation, should be permitted to apply for federal employment outside the scope of their former employing agency [the FAA]." The Directive continues:

> I have further determined that it would be detrimental to the efficiency of operations at the Federal Aviation Administration and to the safe and effective performance of our national air traffic control system to permit the discharged air traffic controllers to return to employment with that agency. Therefore, these former federal employees should not be deemed suitable for employment with the Federal Aviation Administration.

Nothing in the Directive indicates that there is any limitation on the period of time that the strikers are to be barred from employment with the FAA. We agree with our sister circuits that have held that OPM properly interpreted President Reagan's Directive as imposing an indefinite bar on employment with the FAA. *See Dehainaut*, 32 F.3d at 1074 (holding that "OPM reasonably interpreted the language of the presidential directive to impose an indefinite ban upon the employment of controllers removed for striking, not only from all FAA positions, but also from positions which interface with FAA"); *Wagner*, 783 F.2d at 1045 ("[W]e have no basis for rejecting the Director's interpretation of the presidential directive as imposing an indefinite ban upon employment of the striking controllers by the Administration."). Accordingly, we conclude that OPM reasonably interpreted President Reagan's Directive as imposing an indefinite bar on employment with the FAA.

■ Finally, we reject the plaintiffs' contention that they possessed a Fifth Amendment property interest in the right to reemployment with the FAA following a three-year period of debarment. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court explained that, in order "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709. Property interests protected by the Fifth Amendment are not created by the Constitution, but instead are created by "existing rules or understandings that stem from an independent source." *Id.*

As a consequence of the plaintiffs' participation in the strike against the United States, the plaintiffs forfeited not only their positions as federal air traffic controllers but also any right to federal employment. *See 5 U.S.C. § 7311.* The plaintiffs received sufficient due process in the course of their discharge proceedings, *see 5 C.F.R. § 731.302*

(1984) (providing notice and opportunity to be heard); 5 C.F.R. § 731.401 (1984) (providing right to appeal), and do not allege any violation of due process with respect to the proceedings leading to their discharge from the FAA. Any property interest that the plaintiffs had in actual employment with the FAA was extinguished upon their discharge, and they retained no right to reemployment with the FAA. Accordingly, the plaintiffs had no legitimate claim or entitlement to reemployment with the FAA following their discharge.

Nevertheless, the plaintiffs claim that 5 C.F.R. § 731.303 conferred upon them a property interest in the right to reemployment with the FAA after a three-year period of debarment. Section 731.303 provided for a three-year period of debarment and stated that, "[o]n expiration of the period of debarment, the person who has been debarred may not be appointed to any position in the competitive service until his fitness for appointment has been redetermined by OPM." This regulation provided only that a person may be barred for three years, and that OPM must determine an applicant's fitness for employment before appointing the applicant. The regulation did not direct OPM to rehire persons previously discharged for striking against the government, nor did it require OPM to perform suitability determinations for persons discharged for striking. Since the regulation did not confer upon the plaintiffs a legitimate claim of entitlement to reemployment with the FAA between 1984 and 1993, the plaintiffs did not possess a constitutionally protected property interest upon which to premise their Fifth Amendment due process claim.

## II. Violation of Regulations

 In their second claim for relief, the plaintiffs allege that OPM's policy of barring the strikers from reemployment with the FAA between August 1984 and August 1993 violated OPM's "own promulgated regulation [§ 731.303], which provides for a maximum three-year period of debarment ... and thereby violated plaintiffs' due process rights." The plaintiffs argue that their claim is supported by the Supreme Court's decision in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), in which the Court held that the failure of the Board of Immigration Appeals to comply with its own established regulations was reversible error. The *Accardi* doctrine is a "judicially-evolved rule ensuring fairness in administrative proceedings" by requiring "that the rules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency." *Montilla v. INS*, 926 F.2d 162, 166, 168 (2d Cir.1991).

The application of the *Accardi* doctrine is not warranted in this case because OPM did not arbitrarily fail to comply with its own regulations. Even if 5 C.F.R. § 731.303 is interpreted as generally limiting debarment to three years, President Reagan's Directive, which specifically related to the strikers and which is consistent with 5 U.S.C. § 7311, overrode § 731.303 in this particular situation. The President has broad authority pursuant to 5 U.S.C. §§ 3301 and 7301 to regulate employment matters,[3] and President Reagan exercised this authority to enforce § 7311 by issuing his directive. The Seventh Circuit in *Dehainaut* held that, even if § 731.303 applies a more lenient policy than that provided for in § 7311, "the President, acting under his statutory authority to regulate federal employment, may issue a directive overriding that regulation." 32 F.3d at 1074 (citation and footnote omitted); *see also Korte v. Office of Personnel Management*, 797 F.2d 967, 970 (Fed.Cir.1986) ("[T]he President's directive overrode or su-

---

**3.** Section 3301 provides that:
 The President may—
 (1) prescribe such regulations for the admission of individuals into the civil service in the executive branch as will best promote the efficiency of that service;
 (2) ascertain the fitness of applicants as to age, health, character, knowledge, and ability for the employment sought; and

 (3) appoint and prescribe the duties of individuals to make inquiries for the purpose of this section.
 Section 7301 provides that "[t]he President may prescribe regulations for the conduct of employees in the executive branch."

perseded [§ 731.303] and imposed an indefinite ban on the class of which [plaintiff] was a member."). Therefore, OPM did not arbitrarily disregard its own regulations, but instead complied with President Reagan's Directive.

Moreover, the plaintiffs' reliance on *Accardi* for the proposition that the President lacked the authority to direct OPM to enforce an indefinite bar is misplaced. In *Accardi*, Congress had delegated to the Attorney General discretionary authority to suspend deportation of deportable aliens. The Attorney General, in turn, promulgated regulations delegating all of his discretionary authority to the Board of Immigration Appeals in deportation cases. *Accardi*, 347 U.S. at 266, 74 S.Ct. at 502–03. The Supreme Court held that, as long as the Attorney General's regulations remained in effect, the Attorney General could not interfere with the Board's decision in deportation cases. *Id.* at 267, 74 S.Ct. at 503. However, unlike the complete delegation of discretionary authority in *Accardi*, the President did not delegate to OPM all his authority under §§ 3301 and 7301 to regulate federal employment.[4] Moreover, the President did not specifically delegate his authority to prohibit the employment of individuals who have participated in a strike against the United States. Thus, the President retained the authority to direct OPM to enforce an indefinite bar against the employment of the strikers by the FAA and private companies contracting with the FAA, and OPM was obligated to enforce

the Directive. Therefore, OPM did not violate the plaintiffs' due process rights by disregarding its own regulations. Accordingly, the plaintiffs' claim was properly dismissed by the district court.

### III. APA Claim

■ The third claim asserted in the amended complaint is that OPM failed to comply with the APA's notice and comment rulemaking procedures before adopting its policy of barring the strikers for an indefinite period from reemployment with the FAA.[5] We believe that OPM did not violate any provisions of the APA, and therefore that this claim also properly was dismissed by the district court.

■ Under the APA, there are two distinct types of rules—legislative rules and interpretive rules. Legislative rules are those that "create new law, rights, or duties, in what amounts to a legislative act." *White v. Shalala*, 7 F.3d 296, 303 (2d Cir.1993). Interpretive rules, however, do not create rights, but instead "clarify an existing statute or regulation." *Id.* Because they do not create or destroy any rights, interpretive rules are exempt from the APA's notice and comment procedures. *See* 5 U.S.C. § 553(b)(3)(A); *New York City Employees' Retirement Sys. v. SEC*, 45 F.3d 7, 12 (2d Cir.1995).

We think that OPM's policy is an interpretive rule, rather than a legislative rule. OPM's policy did not "create new law, rights,

---

4. In Executive Order No. 10577, the President authorized the Civil Service Commission, the predecessor of OPM, to "promulgate and enforce such regulations as may be necessary to carry out the provisions of the Civil Service Act and Rules, the Veterans' Preference Act, and all other applicable statutes or executive orders imposing responsibilities on the Commission." Exec. Order No. 10577, 19 Fed.Reg. 7521 (1954), *reprinted as amended in* 5 U.S.C. § 3301. In Executive Order No. 11222, the President authorized the Civil Service Commission "to establish[ ] regulations for the conduct of persons in the civil service." Exec. Order No. 11222, 30 Fed.Reg. 6469 (1965), *reprinted as amended in* 18 U.S.C. § 201. As is apparent, neither of these orders totally divested the President of his statutory authority in relation to federal employment matters.

5. The APA's notice and comment procedures provide in pertinent part:

> (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law....
>
> ....
>
> (c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.

5 U.S.C. § 553.

or duties" as would a legislative rule. Prior to OPM's implementation of its policy, Congress had enacted 5 U.S.C. § 7311 and OPM had promulgated 5 C.F.R. § 731.303. Neither § 7311 nor § 731.303 conferred upon the strikers a right to reemployment with the FAA or required OPM to make an individual determination of each striker's suitability for employment. Thus, OPM policy that deemed all strikers not suitable for reemployment with the FAA did not change any existing law, right, or duty. Nor did OPM's policy create any new laws, rights, or duties.

Instead, OPM's policy reflects an exercise in "its rule-making power to clarify an existing statute or regulation." *White,* 7 F.3d at 303. OPM's policy implementing President Reagan's Directive is derived from 5 U.S.C. § 7311 and OPM's own regulations. OPM's regulations enumerate several factors to be considered in determining whether an individual is suitable for employment with the federal government. These factors included "[w]hether the conduct of the individual may reasonably be expected to interfere with or prevent effective performance in the position applied for" and "[w]hether the conduct of the individual may reasonably be expected to interfere with or prevent effective performance by the employing agency of its duties and responsibilities." 5 C.F.R. § 731.202. President Reagan's Directive provided a finding, based on the same factors enumerated in § 731.202, that the strikers were not suitable for reemployment with the FAA. OPM adopted the interpretation provided in President Reagan's Directive, stating that the strikers "shall be determined not to be suitable for reinstatement or appointment in any position in the Federal Aviation Administration, because it would be detrimental to the efficiency of that agency by interfering with or preventing its effective performance of its duties and responsibilities (5 CFR § 731.202(a)(2))." Federal Personnel Manual Bulletin 731–6. Thus, OPM policy was based on an interpretation of its own regulations. Because OPM's policy neither created any new law or rights nor was derived from an interpretation of OPM's own regulations, we hold that it is an interpretive rule that is exempt from the APA's notice and comment procedures.

## IV. *Prohibition on Employment with Private Entities*

We think that the district court properly determined that the plaintiffs lacked standing to raise their final claim for relief. The essential question under the standing doctrine is "whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (quotations omitted). In *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the Supreme Court defined the three constitutional requirements that a litigant must satisfy in order to establish standing. First, the plaintiffs must have suffered an injury in fact—an injury that is actual or imminent, not merely hypothetical or conjectural. *Id.* at 560, 112 S.Ct. at 2136. Second, the injury must be fairly traceable to the challenged action. *Id.* Third, it must be likely, not just possible, that the injury will be redressed by a favorable ruling of the court. *Id.* at 561, 112 S.Ct. at 2136–37.

The plaintiffs assert in their final claim that the FAA deprived them of their Fifth Amendment liberty and property interests to pursue employment by inserting into its contracts with private companies a prohibition against the employment of the strikers. The only relief that the plaintiffs seek under this claim is a declaration that the policy is unconstitutional and an injunction enjoining the FAA from continuing to enforce its policy. However, the policy challenged by the plaintiffs was repealed by President Clinton's Directive before the plaintiffs filed the amended complaint. Therefore, neither a declaratory judgment that the repealed policy is unconstitutional nor an injunction prohibiting the FAA from enforcing the policy would benefit the plaintiffs in any way. Because a favorable ruling by the district court would not redress their alleged injury, the plaintiffs do not have standing to pursue this claim.

Nonetheless, the plaintiffs contend that they have standing because the FAA has continued to prohibit private entities that have a contract with the FAA from hiring the strikers. However, even if the FAA continued to enforce its policy, none of the plaintiffs have alleged that they have applied for and have been denied employment with a private enterprise under contract with the FAA following the repeal of the policy. Therefore, the plaintiffs have not alleged that they have been injured from the continued enforcement of the policy that has been repealed. Accordingly, the plaintiffs lack standing to challenge the alleged enforcement of the repealed policy.

## CONCLUSION

In view of the foregoing, we affirm the judgment of the district court.