**FEDERACION DE MAESTROS DE PUERTO RICO, et als., Plaintiffs**

v.

**Anibal ACEVEDO–VILÁ, et als., Defendants.**

**Civil No. 08–1090 (DRD).**

United States District Court, D. Puerto Rico.

Jan. 30, 2008.

## AMENDED ORDER TO SHOW CAUSE AS TO ABSTENTION

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court is Plaintiffs' *Request for Temporary Restraining Order* (Docket No. 3). In the instant case Plaintiffs have filed a complaint for injunctive and declaratory relief under 42 U.S.C. §§ 1983, 1985 and 1988, the First, Fifth and Fourteenth Amendment to the United States Constitution, and 28 U.S.C. § 2201 et seq.

Pursuant to Plaintiffs allegations the Federación de Maestros de Puerto Rico ("FMPR"), was certified as the collective bargaining representative of teachers, and members of the union in 1999, by virtue of Act 45 of February 25, 1998. On August 20, 2002, the Union entered into a collective bargaining agreement with the Department of Education, which expired on August 20, 2005. Plaintiffs state that since August 20, 2002 the FMPR has been the representative for purposes of the collective bargaining of the employees in that unit, and is now the exclusive representative as to wages, terms of employment and in generally representing employees in grievance procedures and litigation relating to these labor matters.

Plaintiffs aver in the Complaint that as of the expiration of the collective bargaining agreement, the Department of Education and the FMPR have been unable to reach an agreement, because defendant, Rafael Aragunde Torres has refused, with the deliberate knowledge of Governor, Anibal Acevedo Vilá, to obey judicial determinations sustaining his willfulness to refuse to negotiate mandatory areas such as the matters described in his "Cartas Ciculares" (Letters relating to negotiation matters, signed by the Secretary of the Department of Education). Furthermore, Plaintiffs allege that the Secretary of Education, Rafael Aragunde Torres has sustained various public conferences wherein he has stated that his policy is to change the leaders of the FMPR; seeking more docile leaders who comply with the governing party's policies. Moreover, Plaintiffs allege that Anibal Acevedo Vilá has made politically motivated expressions relating to the union and that he has publicly announced his intentions to "destroy the FMPR".

Plaintiffs aver that because of the aforementioned facts, the members of the FMPR's executive committee agreed to hold a Delegates Assembly in the Centro de Convenciones del Este, Loiza, Puerto Rico, on September 13, 2007. Plaintiffs allege that in accordance with the provisions of the FMPR's constitution, during the meeting, the Delegates recommended and approved a vote to engage in a concerted teachers' strike. Pursuant to said vote the Delegates mandated the holding of a General Assembly of the members of the FMPR's bargaining unit, which was held on November 11, 2007 at the Coliseo Pedrin Zorrilla in San Juan, Puerto Rico. During said assembly, the members of the bargaining unit **voted unanimously** in favor of ratifying the determination taken by the Delegates of engaging in a concerted teachers' strike and the using of the Union's strike funds. The strike would be called, at the discretion of the FMPR's Executive Committee.

Plaintiffs allege that pursuant to the aforementioned statements and public discussion of ideas, projects and determinations, which are protected by the Constitutional mandates of due process, equal protection, the First and Fifth Amendment to the Constitution of the United States, Rafael Aragunde Torres, with the deliberate consent and instructions of defendant, Anibal Acevedo Vilá, filed charges against the FMPR, requesting the Public Service Labor Relations Commission, hereinafter know as "the Commission or the Administrative Agency", to decertify the union in accordance with the provisions of local law, Act 45. Plaintiffs further allege that on October 8, 2007, a hearing was held as to the merits of the charges filed by Defendants against the FMPR as to the strike vote exercised by the Delegates Assembly and on December 13, 2007 an administrative hearing was held relating to the charges filed by Defendants against the FMPR as to the strike ratification vote held by the General Assembly of the members of the bargaining unit.

Plaintiffs further aver that on January 8, 2008, the Commission issued an opinion and order decertifying the FMPR. The Commission issued hefty fines in the amount of $30,000 against the FMPR and sanctions against all of the Plaintiffs, notwithstanding the fact that the charges were only filed exclusively against the FMPR. Moreover, Plaintiffs allege that as of the date of the filing of the aforementioned charges and the date of the issuance of the Commission's opinion and order, the FMPR has not engaged in a strike nor has it implemented the alleged constitutionally protected decision to engage in the activities proscribed by section 4.7(c)(1) of Act 45. For said reasons, Plaintiffs allege that the named Defendants have incurred in an unlawful conduct by declaring illegal the organization, imposing severe and arbitrary fines, threatening employees with a possible loss of their jobs as teachers, and demanding the FMPR to provide protected information of its members occupying any elected position in the union in order to impose further restraints, constraints and sanctions against Plaintiffs and each and every member of the Delegates Assembly, the Executive Committee, members and employees of the FMPR. Furthermore, Plaintiffs allege that although the charges were filed against the FMPR, the Commission issued and order, without any previous notification or a hearing, against each elected member of the union, who were prohibited through the Commission's order to meet, to continue as representatives of their peers in any future election for a new exclusive representative, until the year 2013, pursuant to 3 L.P.R.A. § 1451(I).

Plaintiffs aver that the over broadness of Act 45, pursuant to which Defendants based their actions, violates Plaintiffs right without procedural and substantive due process, as members of the FMPR and as citizens, who are simply supporting and promoting the negotiations of the collective bargaining agreement and the FMPR delegate's vote and notification of the strike vote.

After reviewing the record the Court hereby orders Plaintiffs to show cause as to why the Court should not abstain from entertaining the instant case, from potentially dismissing the same and/or abstain from exercising jurisdiction pursuant to *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), *Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and/or *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Court briefly explains.

## I. Burford Abstention

In *Burford v. Sun Oil Company,* the United States Supreme Court questioned whether the federal district .court should "as a matter of sound equitable discretion, have declined to exercise [its] jurisdiction ...". *See Burford,* 319 U.S. at 318, 63 S.Ct. 1098. After an extensive analysis the Court found that in order to avoid needless conflicts by the federal court with the administration by a state with its own affairs the federal court should exert abstention.

> 'Few public interests have a higher claim upon the discretion of a federal chancellor and the avoidance of needless friction with state policies. These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary. This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction those powers.'

*See Id.,* at 331, 63 S.Ct. 1098 (*quoting Railroad Commission v. Pullman Co.,* 312 U.S. at 500, 501, 61 S.Ct. at 645, 85 L.Ed. 971).

The Court finds that an abstention pursuant to *Burford* is potentially appropriate in the instant case since the challenge in the Federal Court is how Puerto Rico should regulate the certification and/or decertification of public employee unions of the central Government, as is the FMPR, as opposed to the certification and/or decertification of employee unions representing employees in private corporations or publicly owned corporations that operate as private corporations. The Court deems necessary to clarify that neither under the Constitution of Puerto Rico nor under the Constitution of the United States, public employees have the constitutional right to participate in a strike, or assert the right to strike. *See Unidad Nacional de Trabajadores de la Salud, etc. v. Jose E. Soler, Secretario de Salud,* 133 D.P.R. 153, 157 (1993)(The Supreme Court of Puerto Rico held, in interpreting the Puerto Rican Constitution, that "only employees employed by private corporations or government instrumentalities that operate as private corporations have a constitutional right to organize themselves, to collectively bargain with their employers, to strike and to carry out pickets ...".)(*Translation ours*).

As established by the United States Supreme Court in *Clarry v. United States,* 85 F.3d 1041, 1046 (2nd Cir.1996), the federal law is even more stringent than the local law since the potential remedy involves permanent loss of employment for those employees participating in a strike and a permanent bar on federal employment. The Supreme Court specifically found the following:

> First, Congress made it clear that any person who participates in a strike against the federal government has no right to federal employment. Section 7311 explicitly provides that "[a]n individual may not accept or hold a position in the Government of the United States ... if he ... participates in a strike, or asserts the right to strike, against the Government of the United States." This language unambiguously provides an absolute bar on employment without any temporal limitation. As the Federal Circuit held, "[t]he conclusion is inescapable that Congress meant exactly what it said [in § 7311]-that persons who participated in a strike against the govern-

ment are barred indefinitely from employment in the government."

*See Clarry,* 85 F.3d at 1046; *(quoting Wagner v. Office of Personnel Management,* 783 F.2d 1042, 1046 (Fed.Cir.), cert. denied, 477 U.S. 906, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986)); *United Federation of Postal Clerks v. Blount,* 325 F.Supp. 879, 882 (D.D.C.1971)("It is fair to conclude that, irrespective of the reasons given, there is a unanimity of opinion in the part of courts and legislatures that **government employees do not have the right to strike.**"), *affirmed* 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971).[1] *(emphasis ours ).*

■ The reasoning behind a *Burford* abstention according to recognized constitutional authority, professor, Charles Alan Wright is that the federal Court should not enter into "the issues involved [in] a special aspect of complicated regulatory system of local law, which should be left to the local administrative bodies and courts." *See* 20 Charles Alan Wright & Mary Kay Kane, Federal Practice and Procedure: Federal Practice Deskbook § 54 (2006). This Court reasons, that aside from the due process issue as to sanctioning employees, who were allegedly never provided charges or a hearing, which is intertwined with the certification/decertification procedure, the terms and conditions of the certification/decertification of a union in the central government and the violations of the local constitutional law should first be determined by the local courts since the state enjoys a compelling state interest, which has been federally recognized as a high interest, in regulating union conduct in state government.[2]

## II. Pullman Abstention

■ In *Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) the United States Supreme Court found that a federal court should avoid constitutional determinations of state law by allowing a state to construe the constitutionality of its own law, especially when there is no showing that the requested remedy cannot be pursued with full protection of the constitutional claim in the state courts.

> These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary. This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction of those powers.
>
> . . .
>
> In the absence of any showing that these obvious methods for securing a definitive ruling in the state courts cannot be pursued with full protection of the con-

---

1. Pursuant to the Taft Harley Act, 29 U.S.C. § 158(d), which is applicable to unions representing employees in private companies, "[a]ny employee who engages in a strike within any notice period specified in this subsection, or **who engages in any strike within the appropriate period specified in subsection (g) of this section, shall lose his status as an employee of the employer engaged in the particular labor dispute,** for the purposes of sections 158, 159 and 160 of this title, but such loss of status for such employee shall terminate if and when he is reemployed by such employer." *(Emphasis ours ).*

2. Moreover, the Court deems necessary to state that a *Burford* abstention generally results in a dismissal of the action rather than a retention of jurisdiction pending state adjudication. *See Willcox v. Consolidated Gas Co.,* 212 U.S. 19, 40, 29 S.Ct. 192, 195, 53 L.Ed. 382 (1909).

stitutional claim, the district court should exercise its wise discretion by staying its hands.

See *Pullman*, 312 U.S. at 501, 61 S.Ct. 643(*Internal citations omitted*).

█ The Court finds that an abstention pursuant to *Pullman* is also appropriate in the instant case since what is currently being challenged is the constitutionality of a Puerto Rico law, Act 45 of February 25, 1998 and of two competing constitutional state rights, freedom of expression and the right to education. As to federal challenges in federal court relating to the constitutionality of a state law, in *Rivera–Feliciano v. Acevedo–Vilá*, 438 F.3d 50, 61 (1st Cir.2006), the First Circuit Court of Appeals very eloquently stated the following:[3]

> It would be unusual for a federal court, in order to reach issues of federal constitutional law, to resolve such numerous prior questions of local law absent prior interpretations by the local courts of these local law issues. Under the Pullman abstention doctrine, **"when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state law question and thus avoid the possibility of unnecessarily deciding a constitutional question."** *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975). The Supreme Court has instructed:

> Warnings against premature adjudication of constitutional questions bear heightened attention when a federal court is asked to invalidate a State's law,

for the federal tribunal risks friction generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court.

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 79, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). Where the highest court of the jurisdiction involved has the case pending before it, "once that court has spoken, adjudication of any remaining constitutional questions may indeed become greatly simplified." *Id.* at 80, 117 S.Ct. 1055.

*(Emphasis ours).*

To the undersigned, *Pullman* abstention in the above captioned case simply moves to postpone the federal adjudication of the local union/government relation matter and/or the two local constitutional competing rights involved (right of free speech and right to education), the Court holding its hands, since the local court's determination may "settle the underlying state question and thus avoid the possibility of unnecessarily deciding a [federal] constitutional question." *See Harris County Commissioners Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975) (cited recently in 2006 by the Fist Circuit Court in *Rivera–Feliciano v. Acevedo–Vila*, 438 F.3d at 61). *Pullman* abstention means a postponement of the federal adjudication, not an abdication of federal jurisdiction. "This principle does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise; …", because the local adjudication may resolve and/or moot the potential federal adjudication. *See Harrison v. National Ass'n for the Advancement of Colored People*, 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959).

---

**3.** Plaintiffs' should note the strong language of our Circuit Court, as recently as 2006, favoring abstention "when a federal constitutional claim is premised on an unsettled ques- tion of state law, the federal court should stay its hand …". (Two competing state constitutional rights). *See Rivera–Feliciano*, 438 F.3d at 61.

## III. Younger Abstention

■ Finally, *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), stands for the general proposition that federal courts should abstain because State Courts or State Administrative Agencies may even properly safeguard federal constitutional rights intertwined with "important state interests [that] are involved, so long as in the course of these proceedings the plaintiff will have a full and fair opportunity to litigate his [Federal] constitutional claim". (Certification/decertification proceedings of unions representing government agencies and/or the balancing between two competing state constitutional rights as well as the due process of the never charged nor heard employees). *See Ohio Civil Rights Com'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627, 106 S.Ct. 2718, 2725, 91 L.Ed.2d 512 (1986)(Interpreting *Younger* abstention).

> *Younger v. Harris, supra,* and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances. The policies underlying Younger abstention have been frequently reiterated by this Court. **The notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."** *Id.,* at 44, 91 S.Ct., at 750. Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.

**The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved.** *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604–605, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975). The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature, as in Huffman, supra. **Proceedings necessary for the vindication of important state policies** or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." *Moore,* 442 U.S., at 426, 99 S.Ct., at 2379. "[T]he ... pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims...." *Id.,* at 430, 99 S.Ct., at 2380. See also *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

The question in this case is threefold: first, do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges.

*See Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 431–432, 102 S.Ct. 2515, 2520–2522, 73 L.Ed.2d 116 (1982)(*emphasis ours* ).

Furthermore, the United States Supreme Court has stated that the *Younger* principle is applicable "to state administrative proceedings in which important state interests are vindicated, so long as in the course of those state proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *See Ohio Civil Rights Com'n,* 477 U.S. at 627, 106 S.Ct. at 2723; *see also 17A C.Wright, A. Miller, & E. Cooper, Federal Practice & Procedure* § 4254, pg. 63–64 (2d ed.2006); *Maymo–Melendez v. Alvarez–Ramirez,* 364 F.3d 27 (1st Cir.2004)(Applying *Younger* abstention to an administrative hearing involving a horse racing license suspension). The Court finds that in the instant case there are still pending state administrative proceedings wherein important state constitutional interests are being vindicated and must be balanced, such as the students' constitutional right to an education under the Constitution of Puerto Rico and therefore the states interest in maintaining an uninterrupted education for the Puerto Rican public school students, compared to the union members' right under the First Amendment. Furthermore, the Court finds that since through the state administrative proceedings that have already commenced as well as the judicial state proceeding that may follow, Plaintiffs will have a full and fair opportunity to litigate both their state and federal constitutional claims, the Court should abstain from interfering in the pending administrative/judicial state proceedings. *See Esso Standard Oil Co., v. Cotto,* 389 F.3d 212, 218 (1st Cir.2004)("*Younger*'s basic rule applies so long as the state proceedings provide an adequate opportunity for the complaining party to present its federal claims.")(*Emphasis on original*).

## IV. Speech Plus

Moreover, the Court finds imperative to forewarn as to a critical substantive free speech clarification applicable to all underlying previously discussed abstention doctrines. The Court briefly explains. Although in the instant case Plaintiffs are alleging that they have been deprived of their First, Fifth and Fourteenth Amendments to the Constitution of the United States, by being decertified and sanctioned by the Commission for expressing their constitutional right of the public discussion of ideas, as well as their constitutional right to vote in *lieu* of the public discussion of ideas, Plaintiffs' conduct is not merely free speech but as used in the expressions of the Supreme Court, **speech plus.** The Court briefly clarifies.

The FMPR, through the Delegates Assembly and the General Assembly carried out a vote to engage in a "teacher's strike", which pursuant to Plaintiffs allegations was unanimously ratified by the members of the FMPR's bargaining unit, *see e.g.* Complaint, ¶ 15. What characterizes Plaintiffs actions as **speech plus,** is the fact that pursuant to Act 45 of February 25, 1998, the Administrative Agency was provided the power under state law to decertify a labor organization for promoting, decreeing, or calling "a strike or stoppage, or any other activities that entail the interruption of the work or services, ...". In other words, since the FMPR was prohibited from engaging in a teacher's strike, the fact that Plaintiffs voted in favor of a violation of a local law, characterizes Plaintiffs' conduct as **speech plus,** which the state may regulate. In *Cox v. State of La.,* 379 U.S. 559, 563, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), the United States Supreme Court stated the following:

> The conduct which is the subject of this statute-picketing and parading-is subject to regulation even though intertwined with expression and association. The examples are many of the application by

this Court of the principle that certain forms of conduct mixed with speech may be regulated or prohibited. The most classic of these was pointed out long ago by Mr. Justice Holmes: '**The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic.**' *Schenck v. United States,* 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 [(1919)]. A man may be punished for encouraging the commission of a crime, *Fox v. Washington,* 236 U.S. 273, 35 S.Ct. 383, 59 L.Ed. 573 [(1915)], or for uttering 'fighting words,' *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 [(1942)]. This principle has been applied to picketing and parading in labor disputes. See *Hughes v. Superior Court,* 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985 [(1950)]; *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834 [(1949)]; *Building Service Employees, etc. v. Gazzam,* 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045 [(1950)]. *But cf. Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 [(1940)]. These authorities make it clear, as the Court said in *Giboney,* that 'it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.' *Giboney v. Empire Storage & Ice Co., supra,* 336 U.S. at 502, 69 S.Ct. at 691.

(*Emphasis ours*).

In the instant case the **speech plus** doctrine is activated simply because the strike vote called for the violation of a valid state law, thereby patronizing an illegal strike as determined by the Supreme Court of Puerto Rico. *See Unidad Nacional de Trabajadores de la Salud, etc. v. Jose E. Soler Zapata, Secretario de Salud, etc.,* 133 D.P.R. at 157.

■ Since, it is unquestionable that a State has a legitimate interest in protecting its public schools, and consequently its public educational system, from being paralyzed by a "teacher's strike", during working hours, a State may adopt appropriate regulations to assure that the State's public educational system is operational, in order to continue providing its students their constitutional right to an education, which is explicitly guaranteed by the Constitution of Puerto Rico, Art. II § 5. *See Hortonville Joint School District No. 1, v. Hortonville Education Association, et al.,* 426 U.S. 482, 494–496, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976); *see also Cox,* 379 U.S. at 563, 85 S.Ct. 476.

The Court recognizes that Plaintiffs have performed a recent filing urging the Court not to abstain. *See* Docket No. 8, *Brief Additional Discussion of Law in Support of Temporary Restraining Order and/or Preliminary Injunctive Relief.* However, not only has the First Circuit Court of Appeals recently (2006) ordered abstention when the federal constitutional right claimed is grounded on an "unsettled question of state law", *see e.g. Rivera–Feliciano,* 438 F.3d at 61, but also federal courts are unauthorized to first interpret a state constitution specially when the state constitution in this particular case, requires a balancing between two competing constitutional rights, the right of free speech and the right to a "public education" under Article II, § 5—"Every person has the right to an education ... [which is] free ... [and] non-sectarian ...". The balancing between two competing state constitutional interest should be made in first instance by the state court. The issue at hand is yet another "unsettled question of state law" and "thus [the federal court should] avoid the possibility of

unnecessarily deciding a constitutional question." *See Rivera–Feliciano, Id.,* (*quoting* the Supreme Court in *Harris County Commr's Court v. Moore,* 420 U.S. 77, 83, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975)).

■ There is a further issue at hand pertaining to a local state's compelling interest in deciding the extent of a protected **speech plus** conduct within a decertification of a union representing a state government agency. Finally, nowhere in Plaintiffs recent memorandum (Docket No. 10), is there any recognition that under *federal law* the actions of Plaintiffs are not merely free speech, but **speech plus,** which constitutes a subject which potentially may be regulated by a state, specially if the underlying matter invites to a violation of law.[4]

## V. Recapitulation

For the reasons stated above, Plaintiff is to seriously reevaluate its position of continuing to insist that the federal court entertain the merits of the instant case in lieu that the instant case has a strong presence of a several abstention doctrines that provides discretion to the Court to decline jurisdiction in certain types of cases. The fact that the instant case's Federal Constitutional claim is intertwined with either a compelling state interest that must be decided by the state and not the Federal Court, *see e.g. Burford* abstention, *supra,* or intertwined with issues of "unsettled state law" that should first be decided by the local courts, *see e.g. Pullman* and *Younger* abstentions, *supra,* moves this Federal Court to abstain.

Firstly, it is unquestioned that the local government has a compelling state interest in deciding a certification/decertification procedural issue of an agency of the government challenged under the First Amendment, **speech plus** and due process. The resolution of this matter belongs in first instance to the local court as the underlying question is whether the **speech plus** conduct of the union members, in voting in favor of a strike, constitutes a sufficient overt act to be balanced against First Amendment rights; or contrariwise whether the local Supreme Court finds that since the union members' vote calls for the violation of a local law, said conduct overrides the union members' First Amendment **speech plus** right. This legal controversy, in this Court's opinion, calls for a *Burford* abstention. Simply expressed the local constitutional or statutory construction made by the Supreme Court is on a matter concerning a compelling state interest, unions in the government and/or a matter within the **speech plus** doctrine that overrides the statute mandating decertification.

Secondly, under Pullman/Younger abstention, the courts must perform a balancing between Plaintiffs' right to **speech plus,** the strike vote, against the prohibition of strikes in government agencies that do not operate as private corporations with profit, and on the other hand the students' right to an education, provided under Article II, § 5 of the Constitution of Puerto Rico. This constitutional balancing between to rights, may be in favor of or against Plaintiffs. The balancing between two competing interests of a local state's

---

4. Further the Court reminds Plaintiffs that a Federal Court may not issue any remedy against a state actor in his official capacity, statutory or in equity, based purely on state law as the Eleventh Amendment bars said action. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900,

908, 79 L.Ed.2d 67 (1984). "A federal courts grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *See Cuesnongle v. Ramos,* 835 F.2d 1486 (1st Cir.1987).

constitution, must be initially performed by the state, as mandated by the United States Supreme Court and as further interpreted by the First Circuit Court of Appeals in the case of *Rivera–Feliciano v. Acevedo–Vila,* 438 F.3d at 61,

> ... when a federal constitutional claim is premised on an unsettled question of state law [the competing constitutional rights of education and **speech plus**], the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state law question and thus avoid the possibility of unnecessarily deciding a [federal] constitutional question.

*(Emphasis ours)(quoting Harris County Comm'rs Court v. Moore,* 420 U.S. at 83, 95 S.Ct. 870).

The federal court should therefore abstain under the *Pullman/Younger* abstentions since the state administrative litigation provides an avenue that eventually reaches the Supreme Court of Puerto Rico. The opinion and order of the Commission clearly contains the right of appeal. (The Court orders Plaintiff to provide said translation). Furthermore, Plaintiffs filed as Exhibit 1, the Commission's Opinion and Order dated January 8, 2008, wherein Plaintiffs' right to appeal is clearly delineated at ¶ 30.

▪ The Court is aware that § 1983 does not require exhaustion of administrative remedies and that normally exhaustion of administrative remedies is not necessary as claimed in the recent filing by Plaintiffs at Docket No. 10; but there is one important exception which Plaintiffs missed, which is that Plaintiffs are already within an administrative procedure that provides the right to appeal to the local Appeals Court and eventually to the Supreme Court of Puerto Rico. *See Esso Oil Co., v. Cotto,* 389 F.3d at 218 (This case clearly stands for the proposition that the

*Younger* abstention "applies so long as the state administrative proceedings provide an adequate opportunity for the complaining party to present its federal claims.") Further it is not determinate that the agency is allegedly biased since the appeals process cures the due process bias claim. *See Id.,* at 218–219.

▪ Finally, the Court reminds Plaintiffs that the injunctive relief sought, requires the Court to comply with a quadripartite test best expressed in *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir.1991). The four factors are (1) the likelihood of success on the merits (2) the potential irreparable injury (3) balancing of the relevant equities [of the parties] (4) the effect on the public interest of the grant or denial of the restrainer. *See also New Comm Wireless Services, Inc. v. SprintCom, Inc.,* 287 F.3d 1, 8–9 (1st Cir. 2002). The First Circuit Court however has determined that "the *sine qua non* of this four part inquiry is likelihood of success on the merits; if the moving party cannot demonstrate that he is likely to succeed in the quest, the remaining factors become matters of idle curiosity." The First Circuit Court of Appeals has also coined likelihood of success as the "critical factor in determining the propriety" of the injunction restrainer, *see e.g., Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981), and further as to the factor of likelihood of success, the "analysis begins" in "this formula", as the factor is deemed "critical". *See Public Service Co. of New Hampshire v. Town of West Newbury,* 835 F.2d 380, 383 (1st Cir.1987).

▪ Because the Court has determined that abstention is extremely strong as there are state compelling interests in the state determining the conditions of certification/decertification of unions under a

First Amendment due process challenge and because the case involves the state court balancing to determine the weight to be granted to the two competing state constitutional rights, this Court is inclined to exercise its discretion to abstain.[5] Plaintiffs probability of success is thus slim. Plaintiffs are insisting the Court to take an uphill steep road, full of dangerous slippery curves, interfering with compelling state interests as to the certification/decertification of a union representing government agency employees and or the Court to decide a constitutional matter intertwined within "unsettled state law" between two competing state constitutional rights, the limited right of **speech plus** v. the constitutional right to an education. Notwithstanding, the Court's original inclination, the Court shall wait for Plaintiffs' submittal, should they insist. However, the **"BELLS ARE TOLLING"** for Plaintiffs for the last time.

Consequently, for all of the reasons state above, Plaintiffs' are hereby ordered to show cause, on or before **February 5, 2008,** as to why the Court should not abstain from entertaining this case, ergo from dismissing the case pursuant to the *Burford* abstention and/or the Pullman abstention and/or the *Younger* abstention, relating to jurisdiction pending state judicial resolution. Defendants are to file a Response to Plaintiffs motion to show cause, on or before **February 12, 2008. NO EXTENSIONS SHALL BE GRANTED.**

Furthermore, Plaintiffs are hereby ordered to notify to the Defendants, on or before, **February 1, 2008 at 5:00 p.m.,** a copy of the TRO, the instant order, and any other filings that Plaintiffs may have submitted for the record.

**IT IS SO ORDERED.**

---

**5.** Abstention is a discretionary function of the Court exercising judicial restraint specially in equitable remedies or injunctions to avoid federal/state friction and under sound administrative policy. However, the Court is reviewed notwithstanding for not abstaining in cases clearly requiring such conduct. *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 724–725, 116 S.Ct. 1712, 1724–1725, 135 L.Ed.2d 1 (1996).