**FEDERACIÓN DE MAESTROS DE PUERTO RICO, et al.,
Plaintiffs,**

v.

**Anibal ACEVEDO–VILÁ,
et al., Defendants.**

**Civil No. 08–1090 (DRD).**

United States District Court,
D. Puerto Rico.

March 2, 2008.

---

Jose E. Colon–Santana, Madelin Colon–
Perez, Colon & Roman Law Office, Luis A.
Guzman–Dupont, Luis A. Guzman Dupont
Law Office, San Juan, PR, for Plaintiffs.

Valerie Maldonado–Rivera, Department
of Justice, San Juan, PR, for Defendants.

## AMENDED ORDER OF DISMISSAL DUE TO ABSTENTION

DANIEL R. DOMÍNGUEZ, District Judge.

The Court issued an Amended Order to Show Cause as to Abstention to plaintiffs, Federación de Maestros de Puerto Rico, Rafael Feliciano Hernández, María M. Meléndez Félix, Rafael Martínez Rodríguez, Madeline Colón Rodríguez, María E/ Lara Fontanez, Luis Angel Torres Torres, Angelita Figueroa Torres, Juan Guerrido Torres, Pedro Pastrana Ortiz, Héctor L. Díaz Díaz, Luis M. Santiago Torres, Minerva Arroyo Charneco, Alberto Vázquez Díaz, Juan Santos Nieves, Noel A. Sánchez Rodríguez, Magali Cardec Vélez, Luis Otero Rodríguez, Daniel Zaragoza Ruiz, Reynaldo Alicea, Herminio Sosa Nieves (collectively the "plaintiffs"), on January 30, 2008, 545 F.Supp.2d 207, 2008 WL 943597 (Docket No. 12).

The plaintiffs were ordered to respond by February 12, 2008. Plaintiffs duly complied but, however, failed to follow the court's local rules as to the page limitation. Federación de Maestros was requested by the court to amend their presentation and properly prune their response to the authorized maximum of twenty-five pages. (Docket No. 17.)

Plaintiff then timely submitted a Memorandum with the limits set by the local rules of the court. (Docket No. 19.) Defendants also filed a timely opposition to the Federación de Maestros' request. (Docket No. 20.) But said filing also violated the authorized maximum number of pages. The court ordered the defendants to also comply with the court's local rules as to the number of pages contained in their submittal. (Docket No. 24.) Defendants also timely complied. (Docket No. 25.) The court is ready to rule.

## FACTUAL SCENARIO

■ Since 1993, it is clear that public employees carrying out traditional governmental functions do not have a constitutional right to organize themselves, to participate in collective bargaining, to strike and/or to carry pickets as determined by the Supreme Court of Puerto Rico in *Unidad Nacional de Trabajadores de la Salud v. José E. Soler Zapata, Secretario de Salud,* 133 D.P.R. 153, 157 (1993) ("only employees employed by private corporations or government instrumentalities that operate as private corporations have a constitutional right to organize themselves to collectively bargain with their employers to strike and to carry out pickets ..."). The teachers of the Department of Education are not employees of a private corporation or of a governmental instrumentality operating as a private corporation. Contrariwise, they are carrying out a traditional governmental function in the central government, that is providing public education at elementary, intermediate (junior high school), and high school levels.

Notwithstanding, in 1998 Public Law 45 of February 25, 1998, authorized the right to organize in the public sector codified 3 L.P.R.A. §§ 1451 *et seq.* Pursuant to said law the plaintiff, Federación de Maestros de Puerto Rico (hereinafter referred to as "Federación"), was certified by the Public Service Labor Relations Commission as the exclusive representative of the teachers at the Department of Education.

The law at 3 L.P.R.A. § 1451i(c)(1) provides for a decertification of a certified labor organization that "promotes, decrees, or call[s] a strike or stoppage ..."

As stated in the court's Amended Order to Show Cause as to abstention, plaintiffs aver in the complaint that because of the employers, the Department of Education's, attitude toward the Federación (the union), including the Governor's intention "to

destroy the Union" and/or lack of good faith negotiations, the members of the Federación held a Delegate Assembly in the Centro de Convenciones del Este, Loíza, PR, on September 13, 2007. Pursuant to Federación's constitution, the Delegates recommended and approved a vote to engage in a concerted teacher's strike. The Delegates then requested the holding of a general assembly by all the members of the teachers bargaining unit which was held on November 11, 2007 at the Pedrin Zorrilla Coliseum in San Juan, PR. During the assembly the teachers voted **unanimously** and ratified the vote to engage in a concerted strike, as previously urged by the Delegates, and the use of the union's strike fund. The strike would be called at the discretion of the Executive Committee.[1]

Charges were then filed on September 18, 2008, against the plaintiffs by the Department of Education requesting that the Union be decertified based on the union having violated the law by "promoting, decreeing and/or calling a strike." That is, the union had allegedly violated Section 1451i(c)(1) and Section 1451q.

The Public Service Labor Relations Commission (hereinafter referred to as the "Commission"), after holding a hearing on December 13, 2007, rendered a Decision and Order on January 8, 2008 wherein the Federación was decertified for having violated the law by promoting a strike and by voting in favor of a strike which constituted a conduct in violation of the law. A reconsideration was filed on January 20, 2008 precisely alleging that the decision of the Commission violated plaintiff's First Amendment rights under the local Constitution, Article II § 4. (Reconsideration p. 9.) The Commission denied the Motion of Reconsideration on February 1, 2008 and the Federation appealed by filing an administrative review before the Appellate Court of Puerto Rico, San Juan Region. The appeal by Federación alleges that the main error of law is that the Commission's order violates plaintiffs' rights under Article II, Section 4 of the Commonwealth of Puerto Rico's Constitution, the equivalent of the First Amendment under the federal Constitution. (Appeal filing dated February 8, 2008, p. 5–15.) The Appeals Court originally stayed the effects of the decertification without entering in the merits of the underlying administrative decision, on February 11, 2008. Later, on February 22, 2008, the Appeals Court denied the reconsideration and determined that the union was decertified.[2]

The Court takes judicial notice that the union has now engaged in a concerted strike which began on February 21, 2008. *U.S. v. Muñoz,* 974 F.2d 493, 495 (4th Cir.1992)(matters of common knowledge that are generally "not subject to reasonable dispute").

---

1. Law 45 is silent in its exposition of motives as to the right to strike (Exposition of Motives is transcribed at the Decision and Order of the Commission of January 8, 2008.) However, the law obligates the unions certified under the law to maintain uninterrupted services essential to the citizens. Article 2.4. Further, education is guaranteed under the Constitution of Puerto Rico, Article II § 5. Moreover, specific sections of the law clearly prohibit strikes at 3 P.R. Laws Ann. §§ 1451a(s) ("A strike may be produced by the absence of the employees from the work place, or by intentionally slowing down their work"); 1451p and particularly 1451q (specific prohibition to strike with the potential loss of employment, as to the strikers).

2. The Court takes judicial notice of all administrative and judicial state filings and opinions and orders, Fed. R. Ev. 201, *Fornalik v. Perryman,* 223 F.3d 523, 529 (7th Cir.2000) (Official agency decisions). **Any appealing party is ordered to file an official translation, as none are available, as of this date.**

Under the above described factual scenario the court understands that it should not enter into the judicial controversy because the case is highly influenced by various abstention doctrines counseling the federal court to prudently stay its hand as to the merits of the judicial controversy.

The court must, however, first determine if the claim made by Federación is ripe for adjudication under the rules of self restraint as to "justiciability". *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 242–44, 73 S.Ct. 236, 97 L.Ed. 291 (1952).

■■■■ The federal ripeness doctrine involves the timeliness as to "when" a case may be brought to court. The ripeness doctrine seeks "to prevent the courts, through avoidance of premature adjudication from entangling themselves in abstract disagreement over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effect felt in concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Courts should evaluate the "fitness of the issues for judicial decision and the hardship to the parties withholding court consideration." *Doe v. Bush*, 323 F.3d 133, 138 (1st Cir.2003). See also *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 32 (1st Cir.2007).

■■■■ There is no doubt that the decision of the Commission is not final since as of this date the decision of the current Court of Appeals, entered on February 22, 2008, is still appealable before the Supreme Court of Puerto Rico. In other words, the matter may still be elevated via *certiorari* to the Supreme Court of Puerto Rico, as the time has not elapsed, 4 P.R. Laws Ann. § 22i.

The matter of standing to sue is close since, on the one hand, the decision to decertify is not final but, on the other hand, the plaintiffs "have felt the impact in a concrete way." *Abbott Labs. v. Gardner*, 387 U.S. at 148–49, 87 S.Ct. 1507. Federación de Maestros has undoubtedly felt the impact of the decision in a "concrete way" as, although the decertification is not final, the Commission has treated the matter as if the decision was final and unappealable by ordering at Federación not to request the Department of Education to further negotiate at § 8, p. 40, of its Order of January 8, 2008.

The Department of Education did not negotiate any further with Federación until February 11, 2008 when the Court of Appeals opened a short lived window until February 22, 2008. On that date the Court of Appeals confirmed the decision of the Commission. Hence, at the time of filing in the federal District Court on January 22, 2008, the Federación was suffering a "hardship" of not being able to negotiate and had lost its rights to represent the employees. The Court is, therefore, of the opinion that plaintiffs were suffering a "hardship" notwithstanding the decision of decertification not being final, and hence, the case is ripe for adjudication. *Doe v. Bush*, 323 F.3d at 138.[3]

## ABSTENTION

The Court forewarned plaintiffs that the instant case was potentially covered under

---

**3.** It is immaterial whether the interpretation of the Commission is correct and/or if the Department of Education was correct or incorrect in following the interpretation of the Commission. The court takes no side on the issue. The Supreme Court may eventually decide that the Commission's decision stands as final unless reversed or may decide that the decision of decertification is not final until the Supreme Court decides the potential certiorari. But either way, Federación was at the time of filing suffering "hardship."

*Burford*[4], *Pullman*[5] and/or *Younger*[6] abstention doctrines.

## I. *PULLMAN* ABSTENTION

■ *Pullman* abstention basically stands for the proposition that a federal court should avoid to construe the constitutionality of a state law by allowing the state court to construe the constitutionality of its own law, especially when there is no showing that the requested remedy cannot be pursued as to the constitutional claim in state courts. Plaintiffs are precisely requesting the Court to provide a federal interpretation on a disposition of the Constitution of the Commonwealth of Puerto Rico without first allowing the Supreme Court of Puerto Rico to interpret its own Constitution.

*Pullman* abstention has been traditionally extended to a federal court "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state law question and thus avoid the possibility of unnecessarily deciding a [federal] constitutional question." *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975). "When a federal court is asked to invalidate a State's law ... the federal tribunal risks friction generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); cited in *Rivera–Feliciano v. Acevedo–Vilá*, 438 F.3d 50, 61 (1st Cir.2006).

■ In the instant case, the federal court is being asked the question if under federal constitutional law the decertification of a union is warranted when the union members took a strike vote and delegated the same for execution to a third party, the Federation's Executive Committee. There are various potent reasons under *Pullman* abstention that warrant the federal court to "stay its hand." First, the court may be entering in the case unnecessarily as the Supreme Court of Puerto Rico may determine that even though the matter is not purely free speech but "speech plus," [7] the overt actions and expressions of the members are notwithstanding protected. The Supreme Court may also determine that the overt acts of voting and delegating the strike are sufficient to justify a decertification. The case may then be elevated to the Supreme Court of the United States via *certiorari*.

Second, the Supreme Court of the Commonwealth of Puerto Rico is the most appropriate Court to decide between two local competing constitutional rights, freedom of expression under Article II § 4 and the right to an education that the public school's children enjoy under Article II § 5. The balancing between two local constitutional interests represents not only an "unsettled question of state law" under *Harris County Comm'rs Court v. Moore*, 420 U.S. at 83, 95 S.Ct. 870, but also a potential imprudent action of the "federal court ... invalida[tion] of a state's law ... [by] a federal tribunal risk[ing] friction [and] generating error when it endeavors to construe a novel

**4.** *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

**5.** *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

**6.** *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**7.** *See* the distinction of "speech plus" at this Court's Amended Order to Show Cause due to abstention, Docket No. 12, p. 9–12.

state act not yet reviewed by the state's highest court." *Arizonans for Official English v. Arizona*, 520 U.S. at 79, 117 S.Ct. 1055. Hence, this Court determines that the instant controversy constitutes an excellent candidate for abstention under *Pullman* for this federal court to, "exercising a wise discretion, restrain [our] authority because of "scrupulous regard for the rightful independence of the state government" and for the smooth working of the federal judiciary." *Pullman*, 312 U.S. at 501, 61 S.Ct. 643 (Internal citations omitted.)

■■■ The Court forewarns plaintiffs that, although *Pullman* abstention commonly constitutes merely a postponement of an adjudication,[8] since plaintiffs and defendants are currently involved in a litigation wherein the state rights can be adjudicated, as well as the federal rights, a later return to the federal court may be foreclosed under *res judicata* grounds,[9] as well as potentially under the *Rooker–Feldman* doctrine,[10] reiterated in *Johnson v. De Grandy*, 512 U.S. 997, 1005–1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994) ("a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the losing party's claim that the state judgment itself violated the loser's federal rights").

Hence, the Court begins by reiterating that under the *Pullman* abstention our intervention is at least premature. The Court should prudently decline to enter into a controversy wherein our resolution to interpret the Commonwealth's Constitution based on federal law may eventually turn out to be totally unnecessary.

## II. *YOUNGER* ABSTENTION

■■■ *Younger v. Harris, supra*, stands for the general proposition that federal courts should abstain because State Courts or State Administrative Agencies may properly safeguard **federal constitutional rights** intertwined with "important state interests [that] are involved, so long as in the course of these proceedings the plaintiff will have a full and fair opportunity to litigate his [Federal] constitutional claim." (Certification/decertification proceedings of unions representing government agencies and/or the balancing between two competing state constitutional rights, as well as the due process of the never charged nor heard employees).

The doctrine of *Younger* abstention being applied to pending state administrative procedures appeared for the first time in *Middlesex County Ethics Committee v. Garden State Bar Ass'n.*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). The Supreme Court explained that "the policies underlying *Younger* are fully applicable to

---

**8.** *Harrison v. National Assn. for the Advancement of Colored People*, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

**9.** Res judicata under both federal law and state law include not only those causes litigated but also "all matters which might have been determined as well." *Westcott Construction v. Firemen's Fund of New Jersey*, 996 F.2d 14, 16 (1st Cir.1993). As to res judicata under local law, *see Colón Padilla v. San Patricio Corp.*, 81 D.P.R. 242, 264, 1959 WL 13595 (1959) ("claims that were raised or could have been raised"). See general restatement of res judicata in both federal and state fo-

rums on res judicata applicable in federal court based on cases coming from the state and federal forums, *Nuñez–Nuñez v. Sánchez–Ramos*, 419 F.Supp.2d 101, 110 (D.P.R.2006).

**10.** *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (once a case is decided by a state court a plaintiff may not seek a reversal of the state judgment by rehashing his judicial action via a civil rights complaint).

non criminal judicial proceedings **when important state interests are involved.**" (Emphasis ours).

 Because there is no constitutional right authorizing representation, collective bargaining, and right to strike while performing traditional government services, as opposed to publicly owned state corporation operating as a private enterprise, pursuant to Puerto Rico's Supreme Court case *Unidad Nacional de Trabajadores de la Salud v. José E. Soler Zapata,* 133 D.P.R. at 157, this Court cannot envision a matter wherein there exists a more heightened compelling state interest than unions representing employees performing purely traditional governmental functions. *See also Ohio Civil Rights Com'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (interpreting *Younger* abstention).

> *Younger v. Harris, supra,* and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances. The policies underlying *Younger* abstention have been frequently reiterated by this Court. **The notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."** *Id.,* at 44, 91 S.Ct., at 750. Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights.
> **The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state**

**interests are involved.** *Moore v. Sims,* ·442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604–605, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975). The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature, as in *Huffman, supra.* **Proceedings necessary for the vindication of important state policies** or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." *Moore,* 442 U.S., at 426, 99 S.Ct., at 2379. "[T]he ... pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims...." *Id.,* at 430, 99 S.Ct., at 2380. See also *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

The question in this case is threefold: first, do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges.

*See Middlesex County Ethics Committee,* 457 U.S. 423, 431–432, 102 S.Ct. 2515 (1982). (Emphasis ours).

Furthermore, the United States Supreme Court has stated that the *Younger* principle is applicable "to state administra-

tive proceedings in which important state interests are vindicated, so long as in the course of those state proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *See Ohio Civil Rights Com'n*, 477 U.S. at 627, 106 S.Ct. at 2723. (Emphasis supplied.)

Finally, in *Esso Standard Oil Co. v. Cotto*, 389 F.3d 212, 218 (1st Cir.2004) (the First Circuit clearly held that *"Younger*'s basic rule applies so long as the state proceedings provide an adequate opportunity for the complaining party to present its federal claims"). (Emphasis on original). There is no doubt that the Federación had plenty of opportunities to raise its federal claim at the Commission's procedures, which began before the filing of the instant case. *See* Complaint, Docket No. 2, ¶¶ 16–19, wherein it is averred that hearings were held as early as October 8, 2007. The order of the Commission dated January 8, 2008 states that the complaint was filed at the Commission on September 18, 2007, well before the filing of the instant case in the federal court, on January 22, 2008 (Docket No. 2). Hence, the abstention doctrine is also included under *Younger* by virtue of the fact that protected constitutional federal rights may have been raised and litigated both in the administrative and the subsequent appellate levels. The remedy of the district court is, dismissal of the instant action without prejudice, pending the state court decision, as in the case of *Ohio Civil Rights*, which was remanded to the state court. *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. at 628–629, 106 S.Ct. 2718.[11]

## III. *BURFORD* ABSTENTION

The Court deems unnecessary to add any new analysis to abstention under *Burford v. Sun Oil Company, supra*, other than to restate the salient abstention doctrine applicable to the instant case, as expressed in our Amended Order to Show Cause, Docket No. 12:

> In *Burford v. Sun Oil Company*, the United States Supreme Court questioned whether the federal district court should "as a matter of sound equitable discretion, have declined to exercise [its] jurisdiction ...". *See Burford*, 319 U.S. at 318 [63 S.Ct. 1098]. After an extensive analysis the Court found that in order to avoid needless conflicts by the federal court with the administration by a state with its own affairs the federal court should exert abstention.
>
> > 'Few public interests have a higher claim upon the discretion of a federal chancellor and the avoidance of needless friction with state policies. These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary. This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction those powers.'
>
> *See Id.*, at 331 [63 S.Ct. 1098] (*quoting Railroad Commission v. Pullman Co.*, 312 U.S. [at] 500, 501, 61 S.Ct. [at] 645, 85 L.Ed. 971).

---

**11.** In *Ohio Civil Rights Commission,* 477 U.S. at 627, fn. 2, 106 S.Ct. 2718, the court clearly stated that "the lower courts have been virtually uniform in holding that *Younger* principle applies to pending administrative proceedings in which an important state interest is involved" (citing compendium of cases).

The Court finds that an abstention pursuant to *Burford* is potentially appropriate in the instant case since the challenge in the Federal Court is how Puerto Rico should regulate the certification and/or decertification of public employee unions [in] the central Government, [performing traditional governmental function], as is the FMPR, as opposed to the certification and/or decertification of employee unions representing employees in private corporations or publicly owned corporations that operate as private corporations. The Court deems necessary to clarify that neither under the Constitution of Puerto Rico nor under the Constitution of the United States, public employees have the constitutional right to participate in a strike, or assert the right to strike. *See Unidad Nacional de Trabajadores de la Salud, etc. v. Jose E. Soler* [*José E. Soler Zapata*], *Secretario de Salud,* 133 D.P.R. [at] 157 (The Supreme Court of Puerto Rico held, in interpreting the Puerto Rican Constitution ..." [Brackets added representing amendments from the original].)

The Court merely adds that a person who participates in a strike as defined under the law is subject to a sanction of termination, 3 P.R. Laws Ann. § 1451q. However, no teacher employee was discharged resulting from the Commission order as to decertification of the Federación.

■ Moreover, the Court deems necessary to state that a *Burford* abstention generally results in a dismissal of the action rather than a retention of jurisdiction pending state adjudication. *See Willcox v. Consolidated Gas Co. of New York,* 212 U.S. 19, 40, 29 S.Ct. 192, 53 L.Ed. 382 (1909).

■ *Burford* abstention is warranted in the instant case as the matter of decertification/certification is intrinsically related to the public policy of the local government as to its own employees, not constitutionally entitled to be represented by unions, engaging in actions that potentially may be violating state law. The Supreme Court of Puerto Rico may potentially decide that the overt acts of voting for a strike and delegating the matter are sufficient violations of the law. Taking a strike vote can negatively affect the right to public education (also a constitutional right) by causing disjunction in the educational system with the children and causing serious repercussions in those Puerto Rican families that depend on their children being educated during the hours that both of their parents are required to work. After all, the right to speech, as any other right, is not absolute and can be subject to balancing as to another compelling state constitutional right. The point is, however, that the matter of balancing should be decided by the public policy of the state involved and not by the federal court, such as: (a) the case in Texas as to centralized decision-making in allocating drilling property rights of oil companies, because of the recognized importance accepted by the Supreme Court of uniformly allocating gas and oil to the Texas economy, under *Burford* and/or (b) a case decided by the Supreme Court involving the continuance or discontinuance in the state of Alabama of certain local train service stations. *Alabama Public Service Commission v. Southern Railway,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951). This Court is of the opinion that the decision as to the public policy to be followed with respect to the unions within the government, whose members perform traditional governmental functions, which also involves the members' right to organize, to strike and/or the potential decertification of the union, con-

stitutes a matter enjoying an unquestionable compelling state interest intertwined with a complex issue of state law. A balance is required when there are competing state and federal constitutional rights. Traditionally, in these types of cases, a constitutional determination is a matter to be performed by the Commonwealth of Puerto Rico's Supreme Court, then appealable to the United States Supreme Court.

Hence, *Burford* abstention is also warranted in the instant case.

## IV. THE ARGUMENTS OF THE DEFENDANTS

■ Plaintiffs have filed an eloquent well-prepared memorandum of law in an attempt to dissuade the Court to abstain (Docket No. 19). The first argument is that abstention is "the exception and not the rule." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 359, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). The Court recognizes that abstention is not the general rule. Notwithstanding, the Court enjoys "historical discretion" in determining to abstain under the guidelines provided by the Supreme Court. This highest tribunal has indicated that "we have recognized that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 718, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). The district court also is reviewed for refusing to abstain in a case wherein we should absolutely abstain or decline to abstain. *Id.* 517 U.S. at 725, 116 S.Ct. 1712.

The Court also recognizes that the plaintiffs also filed exceptions as to the application of the doctrines of abstention under *Pullman, Younger,* and *Burford.*

The Court briefly explains why this Court considers the exceptions but declines plaintiffs' invitation to enter into the controversy.

As to *Pullman* abstention no exception cited by plaintiffs can convince the Court to interpret the Puerto Rican Constitution without allowing the Supreme Court of Puerto Rico to first be provided the opportunity to express its position, as expressed by the Supreme Court in *Harris County Comm'rs Court v. Moore,* 420 U.S. at 83, 95 S.Ct. 870, "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand ... to provide the state courts an opportunity to settle the underlying state-law question ... [to] avoid ... unnecessarily deciding a [federal] constitutional question." One unsettled question of state law is the balancing between two state competing constitutional rights, that is, the right of freedom of expression and association *versus* the right to education both under Article II §§ 4 and 5 of the local Constitution. The other unsettled question of law is whether the act to affirmatively vote to strike and delegate the commencement of the strike, constitutes or not sufficient grounds domineering free "speech plus." Thus, the Court declines to override any exception to the clear language of *Harris County, supra,* and its application to this case.

*Younger*'s abstention application to the instant case is also strong and covered by a clear mandate of abstaining in cases where the controversy is already being entertained at the state level by a state court or an administrative body. Federal constitutional questions may be entertained, at this stage, by either a state court or an administrative entity. *Middlesex County Ethics Committee v. Garden State*

*Bar Ass'n,* 457 U.S. at 431–432, 102 S.Ct. 2515 and *Ohio Civil Rights Com'n,* 477 U.S. at 627, 106 S.Ct. 2718. The charges against Federación as to decertification began well before the instant case and were still on going at the time of the filing in this federal court. Further, the constitutional federal claim could have been then made at the Commission or on appeal. Recently, in *Esso Standard Oil Co.,* 389 F.3d at 218, the First Circuit Court decided in 2004, that *Younger* "applies so long as the state proceedings provide an adequate opportunity for the complaining party to present its federal claims." Further, in *Ohio Civil Rights Com'n,* 477 U.S. at 627, fn. 2, 106 S.Ct. 2718, the Supreme Court stated "that the lower courts have been virtually uniform in holding that the *Younger* principle applies to pending [state] administrative procedures in which important states interests are involved." The Court, therefore, declines not to apply the *Younger* exceptions cited by plaintiffs because of the strong language requiring *Younger* abstention by the Supreme Court and our Circuit.

As to *Burford* exceptions, the Court insists that the instant case represents an extremely high compelling state interest, as well as a matter of public policy, which are also intertwined with a complex issue of law, mandating abstention under *Burford.* The highest state interest is simply to allow organization by unions to represent government employees serving in traditional government services, not having the governmental employees the constitutional right to get organized. The complex issue of law is the balancing of interests between two competing local constitutional rights, i.e., the right of freedom of expression and association against the right of education. The Court insists on not accepting any exception to this matter involving a delicate, compelling public policy, intertwined within a complex state constitutional issue, not previously decided by the state court. *Burford* abstention reigns over any exception cited.

## CONCLUSION

Therefore, for the reasons stated above the Court hereby DISMISSES the instant case.

**IT IS SO ORDERED.**