Luis Alfredo **SANTIAGO– SEPULVEDA, et al.,**
Plaintiffs

v.

**ESSO STANDARD OIL COMPANY (PUERTO RICO), INC., et al.,**
Defendants.

Civil Nos. 08–1950 (CCC), 08–1986 (CCC), 08–2025 (CCC), 08–2032 (CCC), 08–2044 (CCC).

United States District Court, D. Puerto Rico.

Oct. 29, 2008.

Juan H. Saavedra–Castro, Juan H. Saavedra–Castro Law Office, Manuel L. Correa–Marquez, Teresa Trujillo–Ortiz, Xana M. Connelly, Correa, Collazo, Herrero & Fortuno, Carlos E. Montanez, Carlos E. Montanez Law Office, Ana M. Nin–Torregrosa, Lourdes M. Santos–Gutierrez, Nin & Rodriguez Law Office, Ramon L. Walker–Merino, Walker Merino Law Of-

fice, Gerardo Pavia, Pavia & Diaz Garcia, San Juan, PR, for Plaintiffs.

Angel E. Rotger–Sabat, Maymi & Rivera–Fourguet, PSC, Hato Rey, PR, PHV Christina Sarchio, PHV Mark Andrew Klapow, Howrey, LLP, Washington, DC, Luis G. Parrilla–Hernandez, Lee Sepulvado–Ramos, Jorge A. Galiber–Sanchez, Sepulvado & Associates, PSC, San Juan, PR, for Defendants.

## OPINION AND ORDER

JUSTO ARENAS, United States Chief Magistrate Judge.

This matter is before the court on motions for preliminary injunction filed by Total Petroleum Puerto Rico Corporation on September 23 and 24, 2008. (Civil 08–1950, Docket No. 42; Civil 08–1986, Docket No. 35; Civil 08–2025, Docket No. 34; Civil 08–2032, Docket No. 31; Civil 08–2044, Docket No. 16.)

In March 2008, Esso Standard Oil Company of Puerto Rico, Inc. ("Esso") announced its decision to terminate all existing franchise agreements with plaintiff franchisees and to withdraw from the Puerto Rico gasoline retail market. Total was announced as the prospective franchisor to replace Esso in the franchise agreements. Plaintiffs filed suit against Esso and against Total in two of the four pre-consolidation cases, Civil 08–1986 and Civil 08–2032, to enjoin the termination of their Esso franchises. The motion for injunctive relief was denied October 15, 2008. (Civil 08–1950, Docket No. 111.)

Total seeks an order requiring plaintiffs to either accept the franchise offers Total made to them by the franchise termination deadline of October 31, 2008 or surrender the gasoline service stations in question by that time. (Docket Nos. 42 & 45.) On September 23, United States District Judge Gustavo A. Gelpí denied Total's mo-

tion in Civil 08–2025 for lack of ripeness (Docket No. 39), and plaintiffs argued for application of the court's logic in their response to Total's motion in Civil 08–1950. (Docket No. 50, at 2.)

After the cases were consolidated, Total filed its first answers to plaintiffs' complaints and a counterclaim asserting (1) "trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)"; (2) "violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)"; (3) "trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)" (Docket No. 52, at 16); (4) that Total complied with the requirements of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq.* (*id.* at 41); and (5) that plaintiffs interfered with Total's contract expectancy. (*Id.* at 42.) The counterclaim sought the same injunctive relief as Total's earlier motions, as well as damages and declaratory relief.

Plaintiffs in Civil 08–2032, filed a motion to dismiss Total's counterclaims and Total's request for injunction on September 29. (Docket No. 62.) Plaintiffs' motion claims the court lacks subject matter jurisdiction over Total's counterclaims because the parties are not of diverse citizenship and because no federal question exists. The contention that no federal question exists rests on the argument that Total has no tenable counterclaim under the Lanham Act.

Total was granted leave to intervene on October 9, 2008. (Docket No. 91.) Total then filed a second amended answer and counterclaim on October 21, which seeks the additional remedy of a declaratory judgment that all contractual provisions of the franchise offers Total extended to plaintiffs are valid. (Docket No. 124). Esso also filed an amended counterclaim in Civil 08–2025, on October 2, which sought a declaratory judgment that Esso's fran-

chise terminations complied with the PMPA. (Docket No. 69).

On October 22, plaintiffs in Civil 08–1950 and in Civil 08–2025, filed an informative motion stating that all but a few of the plaintiffs in those cases had agreed to execute franchise agreements with Total Petroleum Puerto Rico, Inc. (Docket No. 130.) Nonetheless, on October 23, those same plaintiffs filed a request for extension of time to answer Esso's counterclaim (Docket No. 141), and the next day plaintiffs in Civil 08–1986 requested an extension to respond to both Esso's and Total's counterclaims. (Docket No. 142.) Both requests were granted. (Docket No. 144.)

### Discussion

As plaintiffs have been granted additional time to respond to Total's and Esso's counterclaims, this order addresses only Total's motion for injunctive relief.

In order for the court to adjudicate a matter, Article III of the United States Constitution requires that there be a case or controversy between the parties. *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *see* U.S. Const. art. III, § 2. The concept of ripeness has its roots in this case or controversy requirement, as well as in prudential considerations. *Mangual v. Rotger–Sabat,* 317 F.3d 45, 59 (1st Cir.2003). The federal ripeness doctrine involves a question of "when" an issue may be heard by the court. *Federación de Maestros de P.R. v. Acevedo–Vilá,* 545 F.Supp.2d 219, 224 (D.P.R.2008). For a case to be ripe there has to be a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 506, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)).

"The ripeness doctrine seeks 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *McInnis–Misenor v. Me. Med. Ctr.,* 319 F.3d 63, 70 (1st Cir.2003) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

■■■ Determining ripeness involves a two-pronged inquiry.

In the fitness inquiry, both constitutional and prudential concerns operate, with prudential concerns focusing on the policy of judicial restraint from unnecessary decisions. The fitness inquiry "typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends on facts that may not yet be sufficiently developed." *Stern v. U.S. Dist. Court,* 214 F.3d 4, 10 (1st Cir.2000) (quoting *Ernst & Young [v. Depositors Econ. Protection],* 45 F.3d [530], 535 [1st Cir.1995]). "The critical question concerning fitness for review is whether the claim involves uncertain and continent events that may not occur as anticipated or may not occur at all." *Ernst & Young,* 45 F.3d at 536 (quoting *Mass. Ass'n of Afro–Am. Police, Inc. v. Boston Police Dep't,* 973 F.2d 18, 20 (1st Cir.1992)). The fact that an event has not occurred can be counterbalanced in this analysis by the fact that a case turns on legal issues "not likely to be significantly affected by further factual development." *Ernst & Young,* 45 F.3d at 536.

The second prong-hardship-is entirely prudential. The hardship prong evaluates "the extent to which withholding judgment will impose hardship-an inquiry that typically turns upon whether the challenged action creates a 'direct and immediate' dilemma for the parties."

*Stern,* 214 F.3d at 10 (quoting *Abbott Labs. [v. Gardner],* 387 U.S. [136,] 152, 87 S.Ct. 1507 [1967] ). The greater the hardship the more likely a court will be to find ripeness. *Ernst & Young,* 45 F.3d at 536. This inquiry encompasses the question of whether plaintiff is suffering any present injury from a future contemplated event.

*McInnis–Misenor v. Me. Med. Ctr.,* 319 F.3d at 70.

■ Here, the franchise termination date has not yet passed. There is no indication that the plaintiffs will actually refuse to either accept Total's offers or to vacate their retail facilities after October 31. Indeed, the October 22 motion informing the court that nearly all plaintiffs in two cases have agreed to execute franchise agreements with Total indicates such an outcome is highly unlikely. However, there are over 40 plaintiffs that have not spoken to the issue of acceptance at this writing. Moreover, there is no evidence that plaintiffs have used or intend to use Total's brand without permission in order to promote their own business. "Ripeness doctrine reflects the determination that courts should decide only 'a real, substantial controversy,' not a mere hypothetical question." 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3532.2 (2d ed. 1984). Accordingly, Total's request for injunctive relief is not ripe.

Any opinion I might issue in favor of Total would be advisory as to what would be decided if plaintiffs continued to occupy their service stations without accepting franchise agreements as of October 31. *See, e.g., New Progressive Party (Partido Nuevo Progresista) v. Hernandez Colon,* 779 F.Supp. 646, 655 (D.P.R.1991). There is yet uncertainty surrounding what will transpire by October 31.

## CONCLUSION

Total's request for an injunction requiring plaintiffs to either accept Total's franchise offers or vacate their retail facilities by October 31 was not ripe when filed, and is not ripe today. Total's motions for injunctive relief are therefore denied.

SO ORDERED.